UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOEL CARTER,

    Plaintiff,

v.

HEIDI WASHINGTON, et al.,

    Defendants.

F I L E D

JAN 24 2023

CLERK'S OFFICE
U.S. DISTRICT COURT

Case No. 2:21-cv-11361

Hon. Stephen J. Murphy

Mag. Curtis Ivy, Jr.

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

---

NOW COMES, Plaintiff Joel Carter, proceeding pro se in the above entitled action, moves this Court under Fed. R. Civ. P. 56, ask this Court to enter it's order, denying Defendants summary judgment motion, for the reasons set forth in Plaintiff's accompanying brief in support.

January 18, 2023

Respectfully submitted,

Joel Carter #410324
Macomb Corr. Facility
34625 26 Mile Road
Lenox Twp., MI 48048

**POOR QUALITY ORIGINALS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOEL CARTER,

        Plaintiff,               Case No. 2:21-cv-11361

V.                         Hon. Stephen J. Murphy

HEIDI WASHINGTON, et al.,    Mag. Curtis Ivy, Jr
        Defendants.

---

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

## I. STATEMENT OF FACTS

Plaintiff Joel Carter is a pro se prisoner who sued prison officials and medical personnel under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, and under 42 U.S.C. §1983 for violations of Plaintiff First, Eighth, and Fourteenth Amendment rights. (ECF No. 1, Page ID 1-2). Plaintiff specifically challenges the constitutionality of MDOC Policy Directive 03.04.100(QQ), as applied, and allege that Defendants denied him prescribed, specialized treatment. (Id. at 2). Plaintiff further allege that Defendants retaliated against him after he filed grievances against them for denying him treatment. (Id).

For a complete re-citation of the facts. (See Complaint).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the "pleading, depositions, answer to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in the non-movant's favor. Celotex v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

1

## III. ARGUMENT

A. Defendants exhibited deliberate indifference towards Plaintiff's serious medical need on five occasions when they denied him prescribed and specialized treatment for MS in violation of the Eighth. This Court should deny Defendants motion for summary judgment because genuine issues of material fact exist and a reasonable trier of fact could find in favor of Plaintiff.

Plaintiff alleges that Defendants exhibited deliberate indifference to his serious medical needs, and continue to expose him to an unreasonable risk of harm by their multiple denials of prescribed and refusal to follow the advice of the specialist, infringed upon his Eighth Amendment right to specialized care. (ECF No.1, Pg.id. 8-9). Both Defendants Coleman and Jindal state that they are not obligated to follow the recommendations of an outside specialist. (Plaintiff's Exhibit 2, Defendant Coleman's Admission, at 11; see also Exhibit 3, Defendant Jindal's Admissions, at 18a.)

The Eighth prohibits the infliction of "cruel and unusual punishment". It is made applicable to the states by the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666, 82 S.Ct. 1417 (1962). The Eighth Amendment requires that inmates receive adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976). "An inmate must rely on prison authorities to treat his medical needs" because a failure to do so may result in

"torture or a lingering death" or "in pain and suffering which no one suggest would serve any penological purpose." _Id.,_ _429 U.S. at 103._

To establish an Eighth Amendment violation, an inmate must show that prison officials were deliberate indifferent to a "serious medical need." "Deliberate indifference" involves both an objective and subjective component. The objective component is met if the deprivation is "sufficiently serious". _Farmer v. Brennan,_ _511 U.S. 825, 834, 114 S.Ct. 1970 (1994)._ A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." _Harrison v. Ash, 539 F.3d. 510, 518 (6th Cir. 2008)._ The subjective component is met if a prison official "knows of and disregard an excessive risk to inmate health or safety." _Farmer_ _v. Brennan, 511 U.S. at 837._

Deliberate indifference may be "manifested by prison doctors in their response to the prisoners needs, or by prison guards in intentionally denying or delaying access to medical care or intentionally, interfering with treatment once prescribed." _Estelle v. Gamble, 429 U.S. at 104-105._ Deliberate indifference is also evidenced when prison officials place inmates in a condition likely to cause a serious health problems in the future. _Helling_ _v. McKinney, 509 U.S. 25, 32-33, 113 S.Ct. 2475 (1993)_

3

1. Objective Component: Sufficiently Serious Medical Need

Plaintiff asserts that he suffers from MS which symptoms cause chronic leg weakness, radicuopathic pain, burning, numbness, dizziness, fatigue, headaches, dysuria, arthrolgias, and myalgias that is well-documented. (Exhibit 4). These conditions has been diagnosed by two Neurologist as mandating treatment. Therefore, Plaintiff's medical need is sufficiently serious. Choquette v. DuVall, 2017 U.S. Dist LEXIS 217618 * 13-14 (W.D. Wash 2017)( Multiple Sclerosis and the neuropathic pain associated with it are serious medical needs because failure to treat them will lead to further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency).

Defendant Jindel does not dispute that MS patients exprience pain and affects the ability to move, sit, stand, and walk. (Exhibit 3, Jindal's Admission, at 1, 1F, "MS is a lifelong condition that in some circumstances can cause serious disability"). But Defendants argue that "Plaintiff must place verifying medical evidence in the record to establish the detrimental effect" of the inadequate treatment. (ECF No 61, Pg. 813). Defendants quote Blackmore v. Kalamazoo Cty., 390 F. 3d. 890, 898 (6th Cir. 2004). Plaintiff argues that Blackmore stand for the position that if a claim is based on the prison's failure to treat a condition adequately, or where the prisoners' affliction is seemingly minor or non-obvious, the plaintiff must place verifying medical evidence

4

in the record to establish the detrimental affect of the delay in medical treatment." *Santiago v. Ringle, 734 F.3d, 585,590 (6th Cir. 2013)*.

Defendants refuse to abide by the instructions of Dr. Upchurch and Dr. Anagnos for certain medication and dosage, so the "failure to treat" his condition adequately, is immaterial because Defendants conduct amounts to an outright denial of treatment. It is also immaterial that Plaintiff place verifying medical evidence in the record because Plaintiff's medical need is not minor or non-obvious, and this case does not involve a delay in treatment. "Where the seriousness of a prisoner's need for medical care is obvious even to a lay person", this obviousness is itself sufficient to satisfy the objective component of the Eighth Amendment. *Blackmore v. Kalamazoo Cty., 390 F.3d at 898*. However, Plaintiff argues that the clinical findings of Dr. Upchurch and Dr. Anagnos qualifies as 'verified medical evidence'.

## 2. Subjective Component: Knowledge and Disregard

Plaintiff argues that Defendants knew of and disregarded a substantial risk of serious harm to Plaintiff's MS pain when they intentionally withheld prescribed medication sufficient to alleviate severe and chronic neuropathic pain.

a. <u>Defendants August 2018 interferance with prescribed and specialized treatment.</u>

On August 14, 2018, Plaintiff was taken to Henry Ford Allegiance Neurology Center. (<u>ECF No. 1, Pg.Id 5</u>). Plaintiff was evaluated by MS Specialist; Dr Timothy Upchurch. In a Health Record dated August 18, 2018, Dr. Upchurch states "he note chronic symptoms of leg weakness as well as radicuopathic pain in both arms, as well as burning pain in his thighs. He used Copaxone in the past, but has now discontinued this medication due to symptoms of foot blisters. His last Neuro appointment was 12/16/16 when he was placed on Gabapentin 300mg TID for Lhermitte's phenomenon; he also uses Baclofen 20mg TID, Amitriptyline 75mg qhs, and amantadine 100mg BID". (<u>Exhibit 4, Health Record</u>). Dr. Upchurch further notes in his "Assessment";

1. Multiple Sclerosis (CMS-hcc)
Pt with hx. MS since 2000, formerly on Copaxone but with side effects of blisters (not injection site reactions). Also with increased nuerpathic pain on Gabapentin 300mg three times a day. Will increase Gabapentin to 600mg TID, and order CBC...

Plan:
1. Increase Gabapentin to 600mg three times a day for nerve pain.

Instructions:
1. Increase Gabapentin to 600mg three times a day for nerve pain.

(<u>Exhibit 4, Health Record Pg. 4</u>).

6

On August 16, 2018 Defendant Jindal processed Dr. Upchurchs request to the Pain Management Committee ("PMC"). In an ACMO Review record, Jindal requested non-formulary medication that states;

> Neurontin 600mg TID. Pt has MS. Prescribed Neurontin for Lhermitte's phenomenon. Also on Baclofen and Elavil. Seen by Neurology on 8/14/18, recommending increase.

(<u>Exhibit 5</u>, ACMO Review). That same day, Defendant Coleman deferred the request stating;

> Deferred Neurontin 600mg TID
> Approved Neurontin 400mg TID via PMC

(<u>Exhibit 5</u>).

Plaintiff argues that Defendant Coleman denied him 600mg Neurontin, and the denial of specific dosage worsened his condition. Defendant Coleman admit that Plaintiff "continued to complain of hip and back pain following the decision to increase Mr. Carter's Neurontin from 300mg to 400mg." (<u>Exhibit 2, Coleman's Admissions, at 8E</u>). Medical evidence also shows that Plaintiff's condition worsen as a result of Defendant Coleman's failure to follow Dr. Upchurch's treatment regime. See (<u>Exhibit 6, Chronic Care Vist "the pain is aching, dull and throbbing... aggravated by movement, walking, and standing"</u>).

Defendant Coleman admits that he is a non-treating physician who has never examined Plaintiff. See (<u>Exhibit 2, Coleman's Admission's, at 7, "Dr. Coleman had not conducted a physical</u>

examination of Mr. Carter's MS. However, prior to making any treatment decisions, Dr. Coleman would evaluate Mr. Carter's medical records). Dr. Upchurch's treatment plan is entitled to greater weight. Indeed, Dr. Upchurch is a MS specialist who Defendants referred Plaintiff to specifically for MS treatment. See e.g. Lox v. Secretary of HHS, 901 F.2d. 1306, 1308 (6th Cir. 1990)(" a treating physician is entitled to greater weight then that of a physician who treats a claimant only once or only reviews the claimants records."). Plaintiff asserts that access to a specialist has no meaning if the specialist is prevented from treating the underlying condition. The specialist must be able to treat medical problems in order to provide "reasonably speedy access" to medical care.

    **b.** **Defendants January 2019 interference with prescribed and specialized treatment.**

On January 23, 2019, Plaintiff was referred to the Neurologist and was seen by Dr. Upchurch. Dr. Upchurch found that Plaintiff suffered from an increase in MS symptoms and ordered Gabapentin (Neurontin) increase from 600mg to 1200 three times a day for nerve pain. Plaintiff notified Dr. Upchurch that he was not receiving the 600mg Neurontin, previously prescribed. Dr. Upchurch responded "they send you to see me, and don't follow my orders." (ECF No. 1, Pg.Id. 5). In a Health Record dated 1/23/2019, Dr. Upchurch instructed Defendants to;

    1. Increase Gabapentin to 1200 mg three times a day for

8

2. Continue Tecfidera 240mg twice a day for MS.

3. Follow up in 4 months.

(Exhibit 7, After Visit Summary). Defendant Jindal submitted a request to the PMC. In a ACMO Review dated January 23, 2019 Jin Jindal medication request states:

> Neurontin 1200mg one po TID. Pt with MS. Prescribed Neurontin and for Lhermitte's Phenomenon and neuropathic pain. Seen by Neurology on 1/23/2019, recommended increase to 1200mg TID.

(Exhibit 8, ACMO Review). Defendant Coleman responded and "Deferred" Dr. Upchurch's order without explanation and in deliberate disregard to Plaintiff's apparent neuropathic pain. Arnett v. Webster, 658 F.3d. 742, 753 (7th Cir. 2011)(doctor disregarded letter from specialist instructing particular drug and dosage). Defendant soldiered on with the previous course of treatment even in the face of evidence that it was not working and contrary to the specialist orders. Dr. Coleman admits that Plaintiff repeatedly complained of worsening symptoms to Defendants during this period. See Exhibit 8, Health Record, "Pt with MS seen by Neurology 1/23/19.... He c/o leg weakness with pain in both arms, as well. Has burning in the thighs"). Despite this evidence, Defendants became increasingly frustrated with Plaintiff for MS treatment, refused to alter his treatment when the condition became worse, and even denied him further medication at one point.

Though a mere difference in medical opinion does not constitute deliberate indifference, ignoring the recommendation of specialist and instead relying on non-treating, non-specialist opinions can

constitute deliberate Indifference. <u>Colwell v. Bannister, 763 F.3d. 1060, 1068 (9th Cir. 2014)</u>; <u>Snow v. McDaniel, 681 F.3d. 978, 999 (9th Cir. 2012)</u>.

Plaintiff likens his case to the situation found to be unconstitutional in Snow v. McDaniel. In Snow, an inmate brought an Eighth Amendment claim after the Utilization Review Panel repeatly refused to authorize hip replacement sugery recommended by outside specialists and a treating physician. <u>Id. at 983-84.</u> The panel denied surgery for approximately two years, concluding that the ~~concluding~~ condition could be treated with pain medication even though it was a "emergency". <u>Id.</u> The Court in Snow held that "the circumstances... raised an inference that the defendants were unreasonably relying on their own non-special conclusions" instead of the recommendations of the Plaintiff's treating specialist. <u>Id. at 986.</u>

### c. Defendants March 2019 retaliation and Interference with prescribed and specialized treatment

Plaintiff alleges that the MDOC Defendants fabricated documents as pretext to deny him prescribed treatment and subject Plaintiff to retaliation for exercising his right to file grievances and lodge complaints against them.

To succeed on a First Amendment retaliation claim, a Plaintiff must show that; (1) the plaintiff is engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing

to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by plaintiff's protected conduct. _Thaddeus-X v. Blatter, 175 F.3d. 378, 394 (6th Cir. 1999)_. Under the third element, "the subjective motivation of the defendant is at issue". _Id. at 399_. "The analysis of motive in relation claims is well-develope" — "once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant" _Id. (citing Mount Health City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977))._ "If the defendant can show that he would have taken the same action in the absence of the protected activity he is entitled to prevail on summary judgment" Id. A defendant must show this by a preponderance of the evidence. _King v. Zamaira, 680 F.3d. 686 (6th Cir. 2017)_.

1. Protected Conduct

Begining on January 27, 2019 Plaintiff initiated a round of grievances against Defendants, alleging that they have an unlawful practice of denying treatment once prescribed. (_Exhibit 18, Grievances_). During a Health Care visit with Defendant Jindal, Plaintiff complained that Defendants are not qualified to make neurology decisions about his MS. Defendant Jindal replied,

"you better be glad you're getting what you get, be careful what you wish for." (ECF No. 1, Pg.Id. 6). Jindal denies that she made the statement. ~~(Exhibit . Jindal Admission at~~ (ECF No. 34, Pg.Id 413).

Defendants do not dispute that Plaintiff engaged in protected conduct when he filed a grievance and made complaints about his MS. (Exhibit 18 ). Plaintiff's protected conduct was, thus, grounded in the First Amendment's protection of the right to "petition the Government for redress of grievances." U.S. Const. amend. I.

### 2. Adverse Action

In response to Plaintiff's complaints and grievances, Defendants discontinued all of Plaintiff's neuropathic and ~~neuromat~~ neuromuscular medications. On March 5, 2019 Defendant Jindal made false entries in Plaintiff's medical record, noting that Plaintiff "admitted to cheeking" Neurontin. (Exhibit 9 ). "Cheeking is a term used to describe a prisoner's action of concealing and pretending to swallow medication." See Meador v. Growse, 2014 U.S. Dist LEXIS 31840 (E.D. Ky. 2014) Plaintiff never admitted to cheeking nor was Plaintiff found to be cheeking his medication. Plaintiff alleges that Defendants allegations are false, malicious, and intended to cause harm and to deny Plaintiff necessary medical treatment for his complaints and grievances about his treatment. (ECF No. 1, Pg.Id. 7).

The denial of pain medication is a sufficient adverse action

for purpose of retaliation. See Pratt v. Rowland, 65 F.3d. 802, 806 (9th Cir. 1995)( retaliation need not be an independent constitutional Violation); Broadhern v. Cry, 584 F.3d. 1262, 1270 (9th Cir. 2009) (mere threat of harm can be an adverse action).

### 3. Casual Connection

Defendants do not dispute the causation element of Plaintiff's retaliation claim. Plaintiff must show that "the adverse action was motivated at least in part as a response to the exercise of of Plaintiff's rights. Paige v. Coyner, 614 F.3d. 272, 282 (6th Cir. "A defendants motivation for taking action against the plaintiff is usually a matter best suited for the jury." Paige, 614 F.3d. at 282 (quoting Harris v. Bornhorst, 513 F.3d. 503 (6th Cir. 2008).

Plaintiff argues that the falsification of Medical records and deviation from MDOC operating procedure is evidence that creates an inference of retaliatory motive. In an Administrative Note dated March 5, 2019 at 1:22 p.m., a nurse entered a comment in Plaintiff health record that states as follows:

> Spoke to inmate post being caught checking his Neurontin.
> I asked inmate why he was checking them. He replied with
> "well, because I don't always need them". I told him it
> would be a better option to refuse rather then check the
> medication. He said "wont they just take the med from me
> then?

Plaintiff denies making this statement. (ECF No. 1, Pg. Id. 6). Prior

to the nurses entry. Defendant Jindal made a note at 1:08 pm, stating:

> Informed by nursing supervisor that patient admitted to "cheeking" Neurontin

(Exhibit 9). Also at 1:08 pm, Jindal submitted a request to Defendant Coleman to discontinued Plaintiff's Neurontin that notes,

> Neurontin. Patient admitted to cheeking medication and giving to other prisoners. Please approve for taper and discontinuation of medication.

(Exhibit 9). At 4:57, Defendant Coleman responded, stating

> Approved.... I would taper off of all his PMC meds and remove him from PMC.

(Exhibit 9). Defendant Jindal agreed. Defendant discontinued Plaintiff's prescriptions for Neurontin, Baclofen, and Amitriptyline, this evidence shows that Plaintiff's medications were discontinued for punitive purposes rather then medications reasons.

Plaintiff asserts that he was never caught cheeking or did he ever admit to cheeking or abusing prescribed medication. The evidence shows that a officer brought Neurontin capsules to healthcare staff to identify, Nurse Smith identified Plaintiff as the only inmate in his unit who receives it( even though prisoners in other units receive the exact same medication), and a nurse accused Plaintiff of cheeking. (Exhibit 9).

The practice of discontinuing pain medication for prisoners accused of cheeking may for a legitimate goal, but there is a dispute of material fact as to whether Plaintiff was cheeking

14

his medication. If he was not, then discontinuing Plaintiff's medication would not be in furtherance of a legitimate goal.

In addition, Plaintiff's prescription for Neurontin and Baclofen were crushed and mixed with two months before the alleged allegations stated by Defendants. (Exhibit 10). There is no way Plaintiff was cheeking medication. Furthermore, prisoner Bobby Mathis #466971 admitted to the possession of Neurontin, not Plaintiff. (Exhibit 11).

Without the medication, Plaintiff has, and continues to exprience neuropathic and neuromuscular pain. The pain at times unbearable, and Plaintiff loses sleep, appetite, ability to move, sit, and walk. (Exhibit 6). Plaintiff contents that it is standard practice of Defendants to accuse an inmate of cheeking for the sole purpose to discontinue their medication.

Plaintiff argues that if Defendants believe he is non-compliant with medication, there are alternative to stopping or discontinuing necessary medication. For example, Plaintiff can be watched while taking the medication, or it can be given in liquid or injection form. See Casey v. Lewis, 834 F.Supp. 1477, 1536 (Ariz. 1993) (see also Exhibit 3, Jindal Admission, at 8, 8A "Jindal admits medication can be given in liquid or syrup", and "medication in liquid or syrup can prevented abuse"). In any event, necessary medication should not be stopped for non-compliance unless the non-compliance is documented in the chart, the prisoner's symptoms is under control, and the practioner has had

a face-to-face interview with the prisoner. _Casey, Id._ Defendant Jindal admit the on March 5, 2019, she did not speak to Plaintiff. (_Jindal's admissions, at 10 b._). "Discontinuation for misuse or abuse of medication would not be violative of the Eight Amendment if alternative methods of treatment were implemented. _Estes v. Rahorst,_ _2013 U.S. Dist. LEXIS 142041 * 19 (N.D.Tex. 2013),_

Plaintiff likens his case to the Supreme Court case of _Pitre v._ _Cain, 562 U.S. 992, 994, 131 S.Ct. 8 (Sct 2010)("Pitre's decision to_ _refuse medication may have been foolish and likely caused a_ _significant part of his pain. But that decision does not give_ _prison officials license to exacerbate Pitre's condition further as_ _means of ~~pushing of~~ punishing or coercing him")._

d. _Defendants May 2019 interfere with prescribed_ _and specialized treatment._

On May 22, 2019 Plaintiff was again taken to MS specialist. Dr. Upchurch. Dr. Upchurch found that Plaintiff suffered an increase in symptomology, and asked Plaintiff why his medication ~~was~~ stopped? Plaintiff responded stating "MDOC officials said that admitted to then that I abused my Gabapentin". (_ECF No._ _1, Pg.Id. 8_). Dr. Upchurch stated "that is a medical necessity" and that he was "sending a strong message to MDOC that you need that medication" (_Id._). In a MDOC Authorization Letter, Dr. Upchurch instructed Defendants:

Has MS since 2000, on Tecfidera 240 BID

Pain meds ... were stopped

① Please Restart Gabapentin 1200 TID, Baclofen 20mg TID, Amitriptyline 75 mg.

(Exhibit 12). Defendant Jindal refused to follow the advice of the treating specialist by failing to acknowledge and process Dr. Upchurch's instructions to restart Plaintiff's prescribed medication for non-medical reasons and without explanation. Defendant Jindal does not dispute that she refused to process Dr. Upchurch request to re-start Plaintiff prescribed treatment. Defendant admits that she received Dr. Upchurch recommendation in May 2019. (Exhibit 3, Jindal's admissions, at 16 b.). Defendant also admits that she did not submit an ACMO review or a request for PMC review. (Exhibit 3, Jindal's Admission, at 16)

c. Defendants December ~~2020~~ 2019 interference with prescribed and specialize treatment.

On December 6, 2019, Plaintiff was taken the Neurology Center. This time Plaintiff was seen by, MS Specialist Dr. Sylvia Anagnas. Dr. Anagnas conclued that, "patients primary symptoms include focal ~~weakness~~ sensory loss (toes on both feet), focal weakness and weakness. This is recurrent problem ... Dr. Anagnas further concluded that Plaintiff was positive for "fatigue; shortness of ~~both~~ breath; dysuria; arthralgias; back pain, gait problems, myalgias, dizziness, numbness, headaches, and sleep disturbance". (Exhibit 13).

Dr. Anagnos then instructed Defendants to "consider Baclofen 20mg Amantadine 100mg BID, and Amitriptyline 75 mg for chronic neuropathic pain due to MS." (*Id.*). Defendant admits that she reviewed "Dr. Anagnos' recommendations were reviewed" and "a PMC request was not made". (*Exhibit 3, Jindal Admission, at 17 d.*) This should be sufficient for summary judgment purposes to find that Defendants were aware of Plaintiff medical needs. *See Farmer, Id. at 842-43.* (*where the evidence shows that a substantial risk to the inmate's health was well-documented and the circumstances suggest that the defendant-official was exposed to information about the risk and thus, must have known about, then such evidence is sufficient to permit a trier of fact to find that defendant-official had actual Knowledge of the risk*).

In evaluating claims of deliberate indifference, courts have distinguished between denial of medical treatment, like that alleged here, and inadequate medical treatment. Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation; "courts will defer to a treating physician's judgment regarding the propriety of a specific course of treatment. *See Monmouth County Corr. Inst, Inmates v. Lanzaro, 834 F.2d. 326, 346 (3rd Cir. 1987)(citing Bowring v. Godwin, 551 F.2d. 44, 48 4th (4th Cir. 1977).*

Plaintiff presents this Court will evidence from multiple Neurologist that Plaintiff requires particular medication or dosage and Defendant are aware of this: A jury might see this as evidence

that the underlying symptoms of Plaintiff's MS were genuine. This is not a case where reasonable medical minds may differ over the appropriate. _Snipes v. DeTella, 95 F.3d. 586, 591 (7th Cir. 1996)._ It is rather, analogous to the hypothetical nurse who knows ~~that~~ that an inmate faces a serious risk of appendicitis, but nevertheless gives him nothing but an aspirin.

Plaintiff has been force to endure nearly four years of serious pain despite the availability of obvious treatment. Defendant strenuously argue that Plaintiff refused treatment and certain medication. Plaintiff contends that he was unable to make it out of bed, and health care staff refused to accommodation Plaintiff by ~~bring~~ bringing medication to his cell front.

Plaintiff also asserts that "the denial of treatment has, and continues to cause Plaintiff to suffer debilitating pain, and has exacerbated Plaintiff's mental illness, causing depression, anxiety, hallucinations, and thoughts of suicide to alleviate pain and suffering. (_ECF No. 1, Pg. Id. 10_).

## B. _Plaintiff clearly exhausted all his available administrative remedies._

The Corizon Defendants assert that Plaintiff exhausted ~~any claims~~ only one grievance related to his claim ARF-236 and that Plaintiff failed to grieve that Dr. Coleman was deliberately indifferent in August 2018. (_ECF No. 61, Pg. Id. 808_).

Plaintiff argues that this is not an isolated or particular

instance of conduct, but a policy or repeated pattern of conduct "An inmate may exhaust administrative remedies by filing a single grievance, and is not required to separately grieve each event." Howard v. Waide, 534 F.3d. 1227, 1244 (10th Cir. 2008) (citing Johnson v. Johnson, 385 F.3d. 503, 521 (5th Cir. 2004)(When inmates have filed a grievance regarding a prison policy, they need not file grievances regarding subsequent incidents in which the policy is applied).

The MDOC Defendants argue that ARF-236 named Washington at Step I. Plaintiff did not describe how he attempted to resolve his claims against her, so the grievance would have been subject to rejection for failure to resolve if she were the only one being grieved. (ECF No. 59, Pg.Id. 714). Defendants argument lack merit, because MDOC officials did not reject Plaintiff's grievances or invoke a procedural bar. MDOC officials addressed the merits. "When the prison officials ~~asked to decide the claim~~ address the merits of the prisoner's compliant without mentioning a problem identifying the object of the grievance, the administrative system has worked and the prison officials have had the "opportunity to correct [their] own mistakes." Woodford v. Ngo, 548 U.S. 81, 89, 126 S.Ct. 2378 (2006); see also Reed-Bey v. Pramstaller, 603 F.3d. 322, 325 (6th Cir. 2010)("when prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits the court should do the same").

The Corizon Defendants argue that ARF-795, was rejected at all three steps and that the grievance was rejected at Step I because Plaintiff failed to attempt to resolve the issue with staff member involved prior to filing the grievance. (ECF No. 61, Pg. Id. 714. The MDOC Defendant state that ARF 795 did not exhaust any of Plaintiff's claims against Washington because the Step I grievance was rejected at Step I for failure to resolve, and the rejection was affirmed through Step III. (ECF No. 59, Pg. Id. 714).

Plaintiff's grievance ARF-795, was improperly rejected his grievance because he did attempt to resolve the grievance with Defendant Jindal prior to filing a grievance. Plaintiff's grievance states that he attempted to resolve the issue by sending a Kite to healthcare. (Exhibit 18). Attached to Exhibit 18, is the Health Care Request Form. ~~The Court should reject the~~ The Complaint alleges that Defendants refuse to document his complaints ~~Exhibit~~ (ECF No.   , Pg. Id   ). Defendant Jindal did not process the Healthcare request form. This Court is asked to reject the implications that "whenever a grievance is rejected, it is not properly exhausted as a matter of law." See Johannes v. Washington, 2016 U.S. Dist. LEXIS 43165, 2016 WL 1253666, *6 (E.D. Mich. 2006)("If this were the case, a prisoner would be barred from filing suit even if the grievance screener incorrectly rejects his grievance as duplicative").

_ARF 1390_

Defendants do not dispute this grievance. On March 27, 2019 Plaintiff filed this grievance against Jindal and Coleman "for maintaining an unconstitutional policy and practice of denying medical treatment once prescribed." (_Exhibit 12_)

This grievance was improperly rejected as "duplicate". This grievance was taken to Step II and step III of the MDOC grievance process. Plaintiff did not recieve a Step III response because MDOC officials at the facility failed to process Plaintiff's mail, or the Step III grievance coordinator failed to process Plaintiff's Step III Appeal. resulting in Plaintiff being prevented from receiving a response. _See Surles v. Andison, 678 F.3d. 452, (6th Cir. 2012)("noting only if the plaintiff contends that he was prevented from exhausting his remedies must the defendant present evidence showing the plaintiff's ability to exhaust was not hindered")_

_ARF 1468_

Defendants do not dispute this grievance. On June 12, 2019 Plaintiff filed this grievance against Defendant Jindal and Washington concerning MDOC "practice of denying treatment once prescribed by an outside provider". (_Exhibit 12_).

This grievance was improperly rejected by MDOC officials as "duplicate". Plaintiff submitted a Step II Appeal Form, but the grievance coordinator failed to process the grievance, by failing to

assign a unique identifying number, so Plaintiff received no response. On August 14, 2019, Plaintiff mailed a Step III Appeal to the Step III grievance coordinator. The Step III grievance coordinator refused to process the appeal due to the lack of an identifier number.

ARF-981

This grievance was written against Jindal and was exhaust though Step I ~~thour~~ through III. (Exhibit 12). Defendants do not contest this grievance.

C. Defendants denied Plaintiff from receiving the benefits and services of the Pain Management Committee, when they excluded Plaintiff from the PMC and removed all PMC, and remove all PMC medication, in violation of the ADA. 42 U.S.C § 12132.

Defendants do not dispute that Plaintiff is disable within the meaning of the ADA. Defendants also do not dispute that they knew of Plaintiff's disability and that Plaintiff is qualified for the receipt of PMC services.

Title II of the ADA, which govern access to "Public Services," states in part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity". 42 U.S.C. § 12132

The Corizon Defendants assert that Plaintiff failed to properly

state an ADA claim in his Complaint, as it is unclear in which way Defendants denied Plaintiff an opportunity to participate or benefit from services, programs or activities, and that Plaintiff failed to state he was discriminated against by the Defendants by reason of his disability. (ECF No. 61, Pg. Id. 815). The MDOC Defendants argue that Plaintiff has not alleged that he was denied benefits of the services, programs, or activities by MDOC Defendants, or that he was subjected to discrimination by MDOC. (ECF No. 59, Pg. Id. 720)

Complaint paragraph 46-47, alleges that Defendants treat Plaintiff's disability differently than the numerous prisoners suffering from more familiar disabilities. Defendant Coleman admits "that the PMC recommends pain medication for a variety of medical diagnoses" (Exhibit , Coleman's Admissions, at 17). The symptoms of MS varies from person to person, and the symptoms are mostly subjective. Defendant Coleman admits that the PMC provide MDOC prisoners with "non-formulary pain medications to treat and manage their objective medical needs". (Id., at 17a). Defendants discriminate against Plaintiff because he is diagnosed with a type of MS that relapse and remits. (ECF No. 1, Pg. Id. 10).

Last, the MDOC Defendants argue that dismissal of Plaintiff's ADA and RA claims against MDOC Defendants in their individual capacities is proper because "neither the ADA nor the RA impose liabilities upon individual. (ECF No. 59, Po. Id. 717). It is undisputed that Plaintiff sued Defendant in their official capacities. Plaintiff

24.

ADA and RA claims is, for all intent and purposes, against the state of Michigan as the real party-in-interest. *See Mingus v. Butler, 591 F.3d. 474, 482(6th Cir. 2010)*

Drawing all interferances in favor of Plaintiff, this Court is ask to conclude that Plaintiff has put forth enough evidence to suggest that Defendants knew of and disregarded a substantial risk of harm towards Plaintiff's medical needs.

## IV. CONCLUSION

**WHEREFORE**, Plaintiff respectfully request this Court to grant Plaintiff's motion for summary judgment, and deny Defendant's summary judgment motion based on the above reasons.

January 17, 2023

Respectfully submitted,

Joel Carter #410324
Macomb Corr. Facility
34625 26 Mile Rd.
Lenox Township, MI 48048

## CERTIFICATE OF SERVICE

I, Joel Carter, hereby certify that on ~~No~~ January 19, 2020 I, placed in the institution's legal mail system, the forgoing documents to be mailed by U.S. Postal Service, First-Class Mail, fully address to;

Sara E. Trudgeon
Michigan Dept. of Attorney General
P.O. Box 30217
~~Troy, MI 48098~~
Lansing, MI 43909

Jeffrey L. Bomber
Chapman Law Group
1441 West Long Lake Rd., Suite 310
Troy, MI 48098

25

# Exhibit 1

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Joel Carter, #410324

        Plaintiff,

v.

Washington et al

        Defendants,

Case No.: 2:21-cv-11361
District Judge: Stephen J. Murphy III
Magistrate Judge: Curtis Ivy, Jr.

---

| | |
|---|---|
| JOEL CARTER, #410324<br>Gus Harrison Correctional Facility<br>2727 East Beecher St.<br>Adrian, MI 49221<br>*Pro Se Plaintiff* | CHAPMAN LAW GROUP<br>Wedad Suleiman, LL.M. (P81970)<br>Attorney for Ricky Coleman, D.O.<br>and Rosilyn Jindal, P.A.<br>1441 West Long Lake Rd., Suite 310<br>Troy, MI 48098<br>(248) 644-6326<br>wsuleiman@chapmanlawgroup.com |

---

## DEFENDANT RICKY COLEMAN, D.O.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR ADMISSIONS

NOW COMES Defendant, RICKY COLEMAN, D.O., by and through his attorneys, CHAPMAN LAW GROUP, for his Response to Plaintiff's First Request for Admissions directed to him, states as follows:

1.     You gain monetary incentives for cost saving MDOC or Corizon?

**RESPONSE TO REQUEST NO. 1: Denied. Defendant Dr. Coleman does not gain any monetary incentives for cost-saving for the MDOC or Corizon.**

2.     Plaintiff suffers from Multiple Sclerosis and Lhermitte's Phenomenon?

**RESPONSE TO REQUEST NO. 2:** **Denied. However, Defendant admits that**

**Plaintiff has been diagnosed with Multiple Sclerosis**

3.      Multiple Sclerosis and Lhermitte's Phenomenon produce serious

symptoms?

      a. MS causes chronic and substantial pain?

      b. Amitriptyline treats chronic pain?

      c. MS causes neuropathic pain?

      d. Gabapentin (Neurontin) significantly reduce neuropathic pain?

      e. Gabapentin (Neurontin) is the standard, first line drug for neuropathic

         MS patients.

      f. MS causes neuromuscular symptoms?

      g. Baclofen is a antiseptic agent used to treat muscle symptoms cause by

         MS?

**RESPONSE TO REQUEST NO. 3:** **Denied. Severity of symptoms for patients**

**living with Multiple Sclerosis and Lhermitte's Phenomenon varies.**

**RESPONSE TO REQUEST NO. 3 SUBSECTIONS A-G:**

**A. Denied. Severity of symptoms for patients living with MS and**

   **Lhermitte's Phenomenon varies.**

**B. Denied with clarification. Amitriptyline is an antidepressant that can be**

   **prescribed to treat neuropathic pain.**

C. **Denied. MS can cause neuropathic pain. However, symptoms for patients living with MS varies.**

D. **Denied. Gabapentin is an anti-convulsant medication typically used to control some forms of seizures. It can be used to treat dysesthesias and pain caused by spasticity in patients with MS.**

E. **Denied. Medication used to treat neuropathy in MS patients vary depending on symptomatology and pain. Anti-convulsants such as Gabapentin are often used, as are anti-depressants.**

F. **Denied. MS may or may not cause neuromuscular symptoms.**

G. **Denied. Baclofen is an antispasmodic agent and a muscle relaxer which can be prescribed to treat spasms, stiffness and pain in MS patients.**

4. Medication used to treat MS is a medical necessity?

**RESPONSE TO REQUEST NO. 4: Denied. Most MS patients take disease modifying medications such as Tecfidera, however not all MS patients require medication.**

5. Failure to treat MS pain could aggravate or worsen MS symptoms?

a. Failure to treat MS pain could exacerbate pre-existing mental disabilities?

**RESPONSE TO REQUEST NO. 5:** Denied. Failure to treat MS pain can impact quality of life, however failure to treat MS pain will not aggravate or worsen other MS symptoms.

**RESPONSE TO REQUEST NO. 5 SUBSECTION A:** Denied for purposes of clarification. Mental disabilities can vary significantly. MS pain may or may not exacerbate pre-existing mental disabilities.

6.   You do not specialize in treatment for Multiple Sclerosis?

  a.  You are not a neurologist and do not make neurology decisions?

  b.  Your decisions do not trump or override the Neurologist?

**RESPONSE TO REQUEST NO. 6:** Admitted.

**RESPONSE TO REQUEST NO. 6 SUBSECTIONS A-B:**

**A. Denied in part.** Defendant Dr. Coleman is not a neurologist; however, he is a licensed physician who has experience evaluating and treating neurology conditions.

**B. Denied.** Defendant Dr. Coleman is a licensed physician and therefore is entitled to exercise his professional medical judgment when making treatment recommendations for patients.

7.   You have never conducted a medical examination or evaluation of Plaintiff's Multiple Sclerosis?

4

**RESPONSE TO REQUEST NO. 7:** **Denied. Defendant Dr. Coleman had not conducted a physical examination of Mr. Carter's MS. However, prior to making any treatment decisions, Dr. Coleman would evaluate Mr. Carter's medical records.**

8. In an ACMO review dated August 14, 2018, outside Neurology and P.A. Jindal requested that Plaintiff receive 600mg Neurontin from PMC?

    a. On August 16, 2018 you deferred the neurology request for Plaintiff to receive 600mg Neurontin?

    b. You did not review the Neurontin clinical findings of Plaintiff prior to your 8/16/2018 deferral?

    c. You deferred Neurology's 8/14/18 request for 600mg Neurontin for non-medical reasons?

    d. You deferred Neurology's 8/14/18 request for 600mg Neurontin for security reasons?

    e. You deferred Neurology's 8/14/18 request for 600mg Neurontin for monetary reasons?

    f. Plaintiff continued to suffer neuropathic pain after your 8/16/18 deferral of 600mg Neurontin?

**RESPONSE TO REQUEST NO. 8:** **Denied. The outside neurologist recommended Mr. Carter's Gabapentin prescription be increased from 300 mg**

to 600 mg. PA Jindal requested an increase of the Gabapentin prescription pursuant to neurologist recommendations.

## RESPONSE TO REQUEST NO. 8 SUBSECTIONS A-F:

A. Denied. The Pain Management Committee deferred the neurology recommendation to increase Mr. Carter's Gabapentin prescription from 300 mg to 600 mg.

B. Denied. The Pain Management Committee reviewed Mr. Carter's medical records and clinical findings of Neurontin prior to the decision to defer the neurologist recommendations. Pursuant to review, Mr. Carter's Neurontin prescription was increased from 300 mg to 400 mg.

C. Denied. The Pain Management Committee deferred the neurologist recommendation as there was not a medical necessity for an increase to 600 mg of Neurontin. Instead, Mr. Carter's Neurontin prescription was increased from 300 mg to 400 mg.

D. Denied. The Pain Management Committee deferred the neurologist recommendation as there was not a medical necessity for an increase to 600 mg of Neurontin. Instead, Mr. Carter's Neurontin prescription was increased from 300 mg to 400 mg.

E. Denied. The Pain Management Committee deferred the neurologist recommendation as there was not a medical necessity for an increase to

**600 mg of Neurontin. Instead, Mr. Carter's Neurontin prescription was increased from 300 mg to 400 mg.**

**F. Denied. For purposes of clarification, Mr. Carter continued to complain of hip and back pain following the decision to increase Mr. Carter's Neurontin from 300 mg to 400 mg.**

9. In an ACMO review dated January 23, 2019, outside Neurology and P.A. Jindal requested that Plaintiff received 1200mg Neurontin from PMC?

   a. On 1/23/19 you deferred the neurology request for Plaintiff to receive 1200mg Neurontin?

   b. You did not review the Neurologist clinical findings of Plaintiff prior to your 1/23/19 deferral?

   c. You deferred Neurology's 1/23/19 request for 1200mg Neurontin for non-medical reasons?

   d. You deferred Neurology's 1/23/19 request for 1200mg Neurontin for security reasons?

   e. You deferred Neurology's 1/23/19 request for 1200mg Neurontin for monetary reasons?

   f. Plaintiff continued to suffer neuropathic pain after your 8/16/18 deferral of 1200mg Neurontin?

7

**RESPONSE TO REQUEST NO. 9:** Denied. The neurologist recommended Mr. Carter's Gabapentin prescription be increased to 1200 mg. PA Jindal then requested an increase of the Gabapentin prescription pursuant to neurologist recommendations.

**RESPONSE TO REQUEST NO 9 SUBSECTIONS:**

A. Denied. Dr. Coleman deferred the neurologists recommendation to increase Mr. Carter's Neurontin prescription to 1200 mg.

B. Denied. Dr. Coleman reviewed Mr. Carter's medical records prior to deferring increase to Mr. Carter's Gabapentin.

C. Denied. The neurologists recommendation was deferred as there was not a medical necessity for Mr. Carter's Gabapentin to be increased to 1200 mg.

D. Denied for reasons stated in Response to Request No. 9, Subsection C.

E. Denied for reasons stated in Response to Request No. 9, Subsection C.

F. Denied for purposes of clarification. Mr. Carter continued to complain of hip and back pain following the decision to defer the neurologist recommendation.

10.   Your repeated deferrals of the treatment orders of Neurology were for discriminatory reasons?

8

   a. You disregarded the treatment orders of the Neurologist treating Plaintiff's Multiple Sclerosis.

   b. You disregarded Plaintiff's medical need for particular medication and dosage to treat Lhermitte's Phenomenon and neuropathic pain?

**RESPONSE TO REQUEST NO. 10:** **Denied. Mr. Carter's medication recommendations were because Mr. Carter did not have a medical need to receive non-formulary prescription medications.**

**RESPONSE TO REQUEST NO 10 SUBSECTIONS:**

**A. Denied. Neurologist recommendations were considered when making treatment decisions regarding Mr. Carter.**

**B. Denied. Mr. Carter's medical needs were met, and he was never denied treatment for his MS. Mr. Carter's complaint is that he did not get the pain medication he desired, not that he was denied all treatment. Mr. Carter consistently received significant treatment for his MS.**

11. You are not obligated to follow the recommendations or orders of an Outside Qualified Health Professional.

**RESPONSE TO REQUEST NO. 11:** **Admitted with clarification. Outside health professionals exercise professional medical judgment when recommending treatment options, and correctional health providers exercise**

their medical judgment in determining whether the recommended treatment is medically necessary.

12. It is the policy of either MDOC or Corizon to view the recommendation of an outside Qualified Health Professional an consultation only?

**RESPONSE TO REQUEST NO. 12: Defendant objects to this request because this is not a request for admission under Fed. R. Civ. P. 36, as it is not written in a form that allows Defendant to answer "admitted" or "denied." Regardless of the foregoing objection, Defendant cannot answer the question as the question is nonsensical. Defendant cannot determine the question that Plaintiff is asking.**

13. Health Care Officials have a practice of failing to follow the advise of an outside Qualified Health Professional pursuant to MDOC policy?

**RESPONSE TO REQUEST NO. 13: Denied. Health care providers exercise their own professional medical judgment in determining whether to follow the advice or recommendations of an outside health care professional.**

14. In an ACMO review dated March 5, 2019, P.A. Jindal notified PMC that patient admitted to cheeking and giving Neurontin to other prisoners?

    a. P.A. Jindal asked you or PMC to discontinue Neurontin?

    b. Plaintiff never admitted to cheeking Neurontin?

    c. Plaintiff never admitted to giving Neurontin to others?

**RESPONSE TO REQUEST NO. 14:** Denied. PA Jindal notified the Acting Chief Medical Officer, Dr. Coleman, of Mr. Carter's cheeking of Neurontin.

**RESPONSE TO REQUEST NO. 14 SUBSECTIONS A-C:**

A. Denied. For clarification, PA Jindal stated, "Pt. admitted to 'cheeking' medication and giving to other prisoners. Please approve for taper and discontinuation of medication."

B. Denied. Plaintiff's Gabapentin was found in the 4-block. Plaintiff was the only inmate prescribed Gabapentin in the 4-block. The issue was discussed with Plaintiff, who admitted to cheeking Neurontin. In Plaintiff's Step I Grievance ARF 2019-03-795-28I, Plaintiff himself implies that he was caught abusing and/or in possession of his Neurontin.

C. Denied for purposes of clarification. Plaintiff never admitted to Dr. Coleman that he gave his Neurontin to others.

15. On March 5, 2019, you approved Jindal's request and directed her to taper off all of Plaintiff's PMC medication and remove him from PMC?

a. You directed Jindal to discontinue all of Plaintiff's neuropathic and neuromuscular MS medications?

b. You directed Jindal to discontinue Neurontin, Baclofen, and Amitriptyline?

c. Baclofen and Amitriptyline was unrelated to the abuse of Neurontin?

11

    d. You directed P.A. Jindal to discontinue Plaintiff's medication based on Plaintiff's admission?

    e. You directed discontinuation of Plaintiff's medication for non-compliance?

    f. You directed discontinuation of Plaintiff's medication for security reasons?

    g. You directed discontinuation of Plaintiff's medication for punitive reasons?

**RESPONSE TO REQUEST NO. 15:** **Denied. Dr. Coleman approved PA Jindal's request to taper and remove Mr. Carter from Neurontin, and then recommended that PA Jindal taper and remove Mr. Carter from all his PMC medications.**

**RESPONSE TO REQUEST NO. 15 SUBSECTIONS A-G:**

    **A. Denied. Dr. Coleman recommended to PA Jindal that she taper Mr. Carter from his PMC medications and remove Mr. Carter from Pain Management Committee medications.**

    **B. Denied. Dr. Coleman recommended to PA Jindal that she taper Mr. Carter from his PMC medications and remove Mr. Carter from the Pain Management Committee.**

C. Defendant objects to this request because it is not a request for admission under Fed. R. Civ. P. 36, as it is not written in a form that allows Defendant to answer "admitted" or "denied." Regardless of the foregoing objection, Defendant cannot answer as the sentence is structured in a way that it is difficult to precisely what the request is asking admission or denial of.

D. Denied. The recommendation was made because Dr. Coleman, exercising professional medical judgment, determined that Mr. Carter did not have a medical necessity for pain medications that were non-formulary, restricted, or have a high risk of abuse.

E. Denied. The recommendation was made because Dr. Coleman, exercising professional medical judgment, determined that Mr. Carter did not have a medical necessity for pain medications that were non-formulary, restricted, or have a high risk of abuse.

F. Denied. The recommendation was made because Dr. Coleman, exercising professional medical judgment, determined that Mr. Carter did not have a medical necessity for pain medications that were non-formulary, restricted, or have a high risk of abuse.

G. Denied. The recommendation was made because Dr. Coleman, exercising professional medical judgment, determined that Mr. Carter did not have

**a medical necessity for pain medications that were either non-formulary, restricted, or have a high risk of abuse.**

16.     You directed P.A. Jindal to remove Plaintiff from the PMC?

    a. Plaintiff is foreclosed from receiving subsequent medical for MS neuropathic and neuromuscular symptoms?

    b. Plaintiff is currently not receiving PMC services?

    c. The PMC continues to choose not to provide services to Plaintiff?

**RESPONSE TO REQUEST NO. 16: Denied. Dr. Coleman recommended that PA Jindal remove Plaintiff from PMC medications.**

**RESPONSE TO REQUEST NO. 16 SUBSECTIONS:**

**A. Denied. Plaintiff is not foreclosed from receiving medical care for MS neuropathic and neuromuscular symptoms. In fact, Plaintiff continued to receive Aspirin and ibuprofen, Zoloft (an anti-depressant which treats nerve pain), and Tecfidera which is a disease modifying therapy for MS patients used to decrease the number of MS episodes and worsening of MS symptoms. Plaintiff received medical care for his medical necessities.**

**B. Denied for purposes of clarification. Plaintiff was prescribed Aspirin, Dimethyl Fumarate (Tecfidera), Fluoxetine, Hydrochlorothiazide, Ibuprofen, Latanoprost, Metoprolol, Mirtazapine, and Risperidone, as of October 22, 2021.**

14

**C. Denied. Plaintiff does not currently have a medical necessity for non-formulary pain medication or other medication that requires PMC approval. Plaintiff is not foreclosed from receiving medications that require PMC review.**

17.    The PMC provides medication to other prisoners who suffer from different disabilities that Plaintiff?

      a. The PMC provides pain medication to other MDOC prisoners who experience chronic pain?

**RESPONSE TO REQUEST NO. 17: Admitted with clarification. Defendant admits that the PMC recommends pain medication for a variety of medical diagnoses.**

**RESPONSE TO REQUEST NO. 17 SUBSECTION A:  Denied. The PMC reviews requests from health care providers for MDOC prisoners to receive non-formulary pain medications to treat and manage their objective medical needs.**

18.    Other alternative treatments exist for MS neuropathic and neuromuscular symptoms beside Neurontin, Baclofen, and Amitriptyline?

      a. You did not recommend that Plaintiff be provided alternative treatments when you directed discontinuation of medication?

15

**RESPONSE TO REQUEST NO. 18**: Admitted in part. The Federal Drug Administration is the entity that approves medication for the treatment of these symptoms.

**RESPONSE TO REQUEST NO. 18 SUBSECTION A:** Denied for purposes of clarification. Plaintiff was already prescribed Tecfidera, aspirin and ibuprofen and was shortly after prescribed Zoloft. The decision to remove Plaintiff from PMC medications did not remove Plaintiff from all medications and pain treatment as he continued to receive medical care for his medical needs.

19. Pain medication to treat chronic pain does not exist in liquid or syrup?

**RESPONSE TO REQUEST NO. 19:** Denied. Pain medication can come in virtually any form or viscosity.

20. Medication that is medically indicated should never be discontinued for non-compliance?

**RESPONSE TO REQUEST NO. 20:** Denied for purposes of clarification. Medications that are required to treat a medical necessity should not be discontinued.

21. Plaintiff is currently not receiving treatment for MS neuropathic pain?

   a. Plaintiff is currently not receiving treatment for MS neuromuscular symptoms?

b. Plaintiff is currently not receiving treatment for Lhermitte's Phenomenon?

**RESPONSE TO REQUEST NO. 21:** **Denied. Plaintiff is receiving Tecfidera to manage the frequency and severity of his MS symptoms. Plaintiff is also prescribed aspirin and ibuprofen.**

**RESPONSE TO REQUEST NO. 21 SUBSECTIONS A-B:**

**A. Denied. Plaintiff is receiving Tecfidera to manage the frequency and severity of his MS symptoms. Plaintiff is also prescribed aspirin and ibuprofen.**

**B. Denied. Plaintiff is receiving Tecfidera to manage the frequency and severity of his MS symptoms. Plaintiff is also prescribed aspirin and ibuprofen.**

22.    In May 2019, a ACMO review was not submitted to PMC regarding Neurology's instructions to restart Plaintiff's MS medication?

a. P.A. Jindal did not contact you or the PMC regarding Dr. Upchurch's recommendations? (In May 2019?)

**RESPONSE TO REQUEST NO. 22:** **Denied. ACMO reviews are not submitted to the PMC.**

**RESPONSE TO REQUEST NO. 22 SUBSECTION A:**

**A. Admitted.**

17

23.    In December 2019, an ACMO review was not submitted to PMC regarding Neurology's instructions to restart Plaintiff's MS medication?

    a. P.A. Jindal did not contact you or the PMC regarding Neurology's December 2019 recommendations

**RESPONSE TO REQUEST NO. 23: Denied. ACMO reviews are not submitted to the PMC.**

**RESPONSE TO REQUEST NO. 23 SUBSECTION A:**

  **A. Admitted.**

24.    Your decisions to withhold effective medical treatment for Multiple Sclerosis does not serve any penological purpose?

**RESPONSE TO REQUEST NO. 24: Denied. Mr. Carter was not denied or withheld effective medical treatment for his Multiple Sclerosis.**

25.    The denial of effective treatment for Multiple Sclerosis may actually produce physical torture?

**RESPONSE TO REQUEST NO. 25: Denied.**

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: December 22, 2021

Wedad Suleiman, LL.M. (P81970)
Attorney for Corizon Defendants
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
wsuleiman@chapmanlawgroup.com

## PROOF OF SERVICE

I certify that this document was served upon all attorneys of record and to Plaintiff at their respective address of record, as listed on 22nd day of December 2021 by means of:

[ x] U.S. Mail   [ ] Hand Delivery
[ ] Facsimile   [ ] _____

MELISSA KAIRIS

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

Joel Carter, #410324

      Plaintiff,

v.

Washington et al

      Defendants,

Case No.: 2:21-cv-11361
District Judge: Stephen J. Murphy III
Magistrate Judge: Curtis Ivy, Jr.

---

JOEL CARTER, #410324
Gus Harrison Correctional Facility
2727 East Beecher St.
Adrian, MI 49221
*Pro Se Plaintiff*

CHAPMAN LAW GROUP
Wedad Suleiman, LL.M. (P81970)
Attorney for Ricky Coleman, D.O.
and Rosilyn Jindal, P.A.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
wsuleiman@chapmanlawgroup.com

---

## DEFENDANT ROSILYN JINDAL, P.A.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

NOW COMES Defendant, ROSILYN JINDAL, P.A., by and through her

attorneys, CHAPMAN LAW GROUP, for her Response to Plaintiff's First Request

for Admissions directed to her, states as follows:

1.      Multiple sclerosis is a serious medical condition?

      a.  MS neuropathic pain are serious symptoms?

      b.  MS neuromuscular symptoms are serious?

      c.  MS causes Lhermitte's Phenomenon?

      d.  MS affects a patients daily activities?

    e.  MS causes chronic pain?

    f.  MS affects a patients ability to move, sit, stand, walk, or sleep?

    g.  MS symptoms are recurrent?

**RESPONSE TO REQUEST NO. 1:** **Denied. MS is a lifelong condition that in some circumstances can cause serious disability, although it can also be mild.**

**RESPONSE TO REQUEST NO. 1 SUBSECTIONS A-G:**

**A. Denied. Severity of pain in those that experience pain from MS can vary.**

**B. Denied. The severity of neuromuscular symptoms in patients with MS varies.**

**C. Denied. Lhermitte's Phenomenon can occur with individuals who have MS, but it can also affect people who do not have MS.**

**D. Denied. MS can affect an individuals activities of daily living, although not in all cases.**

**E. Denied. Individual with MS can experience pain. Only about half of MS patients experience chronic pain.**

**F. Denied. MS can affect a patient's ability to move, sit, stand, walk, or sleep.**

**G. Denied. There are four different types of MS. Dependent on the type of MS, symptoms can be recurrent.**

    2.    Failure to treat chronic pain could worsen MS symptoms?

        a.  Failure to treat chronic pain could worsen pre-existing mental disabilities?

**RESPONSE TO REQUEST NO. 2:** **Denied. Failure to treat MS pain can impact quality of life, however failure to treat MS pain will not aggravate or worsen other MS symptoms.**

**RESPONSE TO REQUEST NO. 2 SUBSECTION A:** **Denied for purposes of clarification. Pain can exacerbate symptoms from certain mental health disorders, however this is dependent on the pain and mental disability.**

3.    Medications used to treat chronic pain is a medical necessity?

**RESPONSE TO REQUEST NO. 3:** **Denied. Use of pain medications to treat chronic pain is highly dependent on the patient and many factors are considered when determining whether to prescribe pain medication to treat chronic pain.**

4.    Prescriptions for "crushed and dissolve" are often ordered when a prisoner is accused of abusing medication?'

      a.  Prisoner is accused of abusing medication?

**RESPONSE TO REQUEST NO. 4:** **Denied with clarification. Prescription medications may be ordered to be crushed and dissolved when a prisoner is found to be abusing or diverting medication. However, that is not the only reason for a provider to order a medication to be crushed and dissolved.**

3

**RESPONSE TO REQUEST NO. 4 SUBSECTION A: Denied. Plaintiff admitted to diverting his Neurontin and implied as much in his Step I Grievance, identified as ARF 2019-03-795-28I.**

5. On January 7, 2019, Plaintiff's Bacolfen had been ordered "open and dissolve"

**RESPONSE TO REQUEST NO. 5: Admitted.**

6. On January 8, 2019, Plaintiff's Neurontin had been ordered "open and dissolve"?

      a. Plaintiff had not been accused of abusing Neurontin or Bacolfen when it was ordered on January 7th and 8th 2019?

**RESPONSE TO REQUEST NO. 6: Denied. Dr. Greiner used her professional medical judgment relating to the administration of Neurontin and determined that Mr. Carter's Neurontin should be opened and dissolved.**

**RESPONSE TO REQUEST NO. 6 SUBSECTION A: Admitted.**

7. Crush and dissolve orders are alternatives to discontinuing needed medications?

**RESPONSE TO REQUEST NO. 7: Denied. Crush and dissolve orders may be given for a variety of reasons, including to ensure a patient takes prescribed medication.**

8. Medication can be given in liquid or syrup?

a. Medication given in liquid or syrup can prevent abuse?

b. Ordering medication in liquid or syrup is an alternative to discontinuing medication?

**RESPONSE TO REQUEST NO. 8: Admitted.**

**RESPONSE TO REQUEST NO. 8 SUBSECTIONS A-B:**

**A. Admitted.**

**B. Denied. See Response to Request No. 7.**

9. On March 2, 2019, Plaintiff was said to have abused Neurontin?

**RESPONSE TO REQUEST NO. 9: Denied for purposes of clarification. A custody officer found eight 400 mg Gabapentin capsules in the 4-block. Mr. Carter was the only inmate in the 4-block prescribed Gabapentin. When confronted by the nursing supervisor, Mr. Carter admitted to cheeking his Neurontin. This is further implied in Mr. Carter's Step I Grievance.**

10. On March 5, 2019, nursing staff stated Plaintiff admitted to cheeking Neurontin?

a. On March 5, 2019, you created an Administrative Note stating that you were informed by nursing supervisor that patience [sic] admitted to "checking Neurontin?

b. On March 5, 2019, you did not speak to Plaintiff?

c. Plaintiff never admitted to "cheeking" Neurontin?

d. You submitted an ACMO Review stating "Pt admitted to "cheeking" medication and giving to other prisoners. Please approve for taper and discontinuation and discontinuation of medication"?

e. Plaintiff never admitted to giving medication to other prisoners?

**RESPONSE TO REQUEST NO. 10: Denied. "Nursing staff" did not state Plaintiff admitted to cheeking Neurontin. From the medical record, it appears that Mr. Carter admitted to cheeking Neurontin to Kaitlyn Brighton, L.P.N.**

**RESPONSE TO REQUEST NO. 10 SUBSECTIONS A-E:**

**A. Denied. From the medical record, it appears that Mr. Carter admitted to cheeking Neurontin to Kaitlyn Brighton, L.P.N.**

**B. Admitted.**

**C. Denied. See Response to Request No. 9.**

**D. Admitted.**

**E. Denied.**

11. You discontinued Plaintiff's Neurontin, Baclofen, and Amitriptyline?

a. You discontinued Plaintiff's prescription of Baclofen and Amitriptyline because he abused Neurontin?

b. Baclofen and Amitriptyline was unrelated to abuse of Neurontin?

c. You did not consider proving Plaintiff liquid or syrup?

6

    d. You discontinued medication because Plaintiff's Complaints and Grievances?

    e. You discontinued Plaintiff's medications for punitive reasons?

    f. You would never discontinue medication that is medically necessary?

    g. Prescribed treatment that is medically indicated should never be discontinued for noncompliance?

**RESPONSE TO REQUEST NO. 11: Denied.**

**RESPONSE TO REQUEST NO. 11 SUBSECTIONS A-G:**

**A. Denied. Plaintiff's Baclofen, Amitriptyline and Neurontin prescriptions were discontinued because Plaintiff did not have a medical necessity requiring those medications.**

**B. Defendant objects to this request because it is not a request for admission under Fed. R. Civ. P. 36, as it is not written in a form that allows Defendant to answer "admitted" or "denied." It is difficult to discern precisely what Plaintiff is requesting for admission.**

**C. Defendant objects to this request because it is not a request for admission under Fed. R. Civ. P. 36, as it is not written in a form that allows Defendant to answer "admitted" or "denied." It is difficult to discern precisely what Plaintiff is requesting for admission.**

7

D. Denied. Plaintiff's medication was discontinued because Plaintiff did not have a medical need for non-formulary prescription pain medications.

E. Denied. Plaintiff's medication was discontinued because Plaintiff did not have a medical need for non-formulary prescription pain medications.

F. Defendant objects to this request because it is not a request for admission under Fed. R. Civ. P. 36, as it is not written in a form that allows Defendant to answer "admitted" or "denied." Notwithstanding the foregoing objection, PA Jindal did not discontinue Mr. Carter's medically necessary medication.

G. Denied. A patient's noncompliance with a medication is generally evidence that the medication is not medically necessary. A patient's noncompliance with a medication that is medically indicated could be discontinued for a variety of reasons.

12.   You disenrolled or removed Plaintiff from the Pain Management Committee?

   a. Plaintiff is now excluded from the PMC?

**RESPONSE TO REQUEST NO. 12:** Denied. PA Jindal discontinued the prescription medications that the Pain Management Committee had previously approved.

**RESPONSE TO REQUEST NO. 12 SUBSECTION A:**

**A. Denied. Plaintiff is not excluded from the PMC. In the case that Plaintiff presents with a medical need that requires non-formulary prescription pain medications, Plaintiff's case can be referred to the PMC.**

13.     MDOC Health Care officials has a practice of discontinuing medications for noncompliance?

**RESPONSE TO REQUEST NO. 13: Denied. Health care providers who provide health services to MDOC inmates may discontinue prescriptions for noncompliance if the provider determines that in their professional medical judgment the noncompliance indicates that the medication is not medically necessary.**

14.     Plaintiff continued to experience neuropathic and neuromuscular symptoms after your discontinuation of medication?

      a. Plaintiff notified you that he suffered from neuropathic and neuromuscular symptoms after your discontinuation of medications?

      b. You did not provide Plaintiff medication to reduce symptoms of neuropathic and neuromuscular symptoms after discontinuation of medication?

9

**RESPONSE TO REQUEST NO. 14:** Denied with clarification. Mr. Carter continued to complain of hip and back pain following the decision to defer discontinue Mr. Carter's non-formulary pain medications.

**RESPONSE TO REQUEST NO. 14 SUBSECTIONS A-B:**

A. Admitted in part. Mr. Carter continued to complain of hip and back pain following the decision to defer the neurologist recommendation.

B. Denied. Mr. Carter continued to receive aspirin and ibuprofen, as well as Tecfidera to treat his MS. Furthermore, Mr. Carter's mental health provider prescribed Zoloft shortly after his medications were discontinued, which alleviates nerve pain.

15.   If a prisoner is under your care, you review an outside provider's recommendation upon receiving the medical finding?

**RESPONSE TO REQUEST NO. 15:** Denied with clarification. MDOC inmates are not assigned health care providers. Often, the provider who referred the patient for outside provider evaluation or treatment will review records of the evaluation but not in every case.

16.   In May 2019, you did not submit an ACMO Review to PMC for the Neurologists recommendations to restart Plaintiff's MS medication?

a. In May 2019, you received Dr. Upchurch's recommendations?

b. In May 2019, you ignored Dr. Upchurch's recommendations?

10

    c. In May 2019, you did not seek approval for Dr. Upchurch's recommendations?

    d. In May 2019, you did not submit request to the PMC for Dr. Upchurch's request because of the incident where Plaintiff was said to abuse medication? (In March 2019).

**RESPONSE TO REQUEST NO. 16: Denied with clarification. PA Jindal did not submit an ACMO review or a request for PMC review after determining in her professional medical judgment that there was not a medical need for non-formulary pain medication.**

**RESPONSE TO REQUEST NO. 16 SUBSECTIONS A-D:**

**A. Admitted.**

**B. Denied. Dr. Upchurch's recommendations were reviewed.**

**C. Denied. PA Jindal exercised her professional medical judgment upon review of Mr. Carter's records and Dr. Upchurch's recommendations and determined that the recommended medications were not medically necessary.**

**D. Denied. A PMC request was not made because PA Jindal, exercising her professional medical judgment, determined that Mr. Carter did not have a medical need for non-formulary prescription pain medication.**

11

17.   In December 2019, you did not submit an ACMO Review to PMC for the Neurologists recommendation to consider medication for Plaintiff's chronic neuropathic pain?

    a.   In December 2019, you received Dr. Anagnas' recommendations?

    b.   In December 2019, you ignored Dr. Anagnas' recommendations and Plaintiff's need for medication?

    c.   In December 2019, you did not seek approval for Dr. Anagnas' recommendations?

    d.   In December 2019, you did not submit request to the PMC for Dr. Aganas' recommendation because of the March 2019 incident where Plaintiff was said to abuse medication?

**RESPONSE TO REQUEST NO. 17 Denied with clarification. PA Jindal did not submit an ACMO review or a request for PMC review after determining in her professional medical judgment that there was not a medical need for non-formulary pain medication.**

**RESPONSE TO REQUEST NO. 17 SUBSECTIONS A-D:**

**A. Admitted.**

**B. Denied. Dr. Anagnas' recommendations were reviewed.**

**C. Denied. PA Jindal exercised her professional medical judgment upon review of Mr. Carter's records and Dr. Anagnas' recommendations and**

**determined that the recommended medications were not medically necessary.**

**D. Denied. A PMC request was not made because PA Jindal, exercising her professional medical judgment, determined that Mr. Carter did not have a medical need for non-formulary prescription pain medication**

18.    You have a practice of failing to follow recommendations, pursuant to MDOC policy 03.04.100 paragraph SS.?

      a.   You are not obligated to follow the recommendation of an outside specialist?

**RESPONSE TO REQUEST NO. 18: Denied.**

**RESPONSE TO REQUEST NO. 18 SUBSECTION A:**

**A. Admitted. Prison healthcare providers exercise professional medical judgment to determine whether to follow treatment recommendations of outside specialists.**

19.    You do not make neurology decisions?

      a.   Your decisions do not trump or override a Neurologists?

**RESPONSE TO REQUEST NO. 19: Denied. Providers, including PA Jindal, are licensed to make independent medical decisions based on their medical judgment.**

13

**RESPONSE TO REQUEST NO. 19 SUBSECTION A:**

A. **Denied. The neurologist exercises professional medical judgment in determining treatment recommendations, and healthcare providers such as PA Jindal exercise their own independent professional medical judgment in determining whether a specialist recommended treatment is medically necessary.**

20.     Your decision to deny Plaintiff effective medical treatment for Multiple Sclerosis does not serve any penological purpose?

**RESPONSE TO REQUEST NO. 20: Denied. PA Jindal did not deny Plaintiff effective medical treatment. Plaintiff continued to receive disease modifying therapy and other medication to treat symptoms of his MS. The decision to discontinue Mr. Carter's non-formulary prescription medications was made after it was determined that Mr. Carter did not have a medical need for such pain medications.**

21.     Your denial of effective treatment for Multiple Sclerosis may actually produce physical torture?

**RESPONSE TO REQUEST NO. 21: Denied. Refer to Response to Request No. 20.**

14

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: December 22, 2021

Wedad Suleiman, LL.M. (P81970)
Attorney for Corizon Defendants
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
wsuleiman@chapmanlawgroup.com

## PROOF OF SERVICE

I certify that this document was served upon all attorneys of record and to Plaintiff at their respective address of record, as listed on 22nd day of December 2021 by means of:

[ x ] U.S. Mail   [ ] Hand Delivery
[   ] Facsimile   [ ] _____

MELISSA KAIRIS

15

# Exhibit 4

Carter, Joel (MR # 62291076) DOB: 02/23/1982

Encounter Date: 08/14/2018

**MRN: 62291076**

Office Visit
8/14/2018
Henry Ford Allegiance
Neurology

Provider: Timothy P Upchurch, MD (Neurology)
Primary diagnosis: Multiple sclerosis (CMS-hcc)
Reason for Visit: Multiple Sclerosis; Referred by Duane Waters Hospital

Timothy P Upchurch, MD (Physician)
Neurology

**Progress Notes**

**Subjective:**

**Patient ID:** Joel Carter is a 36 y.o. male.

HPI
    Pt. Is a 36 y/o RHAAM hx. HTN, glaucoma and multiple sclerosis who presents for evaluation of multiple sclerosis. He states he was diagnosed with MS in 2000 following symptoms of left sided weakness. He received MRIs and a spinal tap and ws diagnosed with MS. He was on interferon injections for roughly 1 week in 2002 (no meds prior to this) and was switched to Copaxone. Roughly 1 yer ago, he was chaged to 40 mg 3 times a week and noted blister on his legs; he switched back to 20 mg qday and symptoms continued. He remains on Copaxone every other day at this time, with decreased blisters.  He notes chronic symptoms of leg weakness as wel as radicuopathic pain in both arms, as well as  burning pain in his thighs. He has used Copaxone in the past, but has now discontinued this medication de to symptoms of foot blisters. His last Neuro appointment was 12/16/16 when he was placed on Gabapentin 300 mg TID for Lhermitte's phenomenon; he also uses Baclofen 20 mg TID, Amitriptyline 75 mg qhs, and amantadine 100 mg BID. He denies bowel or bladder difficulty or swallowing difficulty at this time, and notes minimal daytime fatigue.
The following portions of the patient's history were reviewed and updated as appropriate: allergies, current medications, past family history, past medical history, past social history, past surgical history and problem list.

Review of Systems
Constitutional: Negative for appetite change, fever and unexpected weight change.
HENT: Negative for sore throat.
Eyes: Positive for visual disturbance.
Respiratory: Positive for shortness of breath. Negative for cough.
Cardiovascular: Negative for chest pain and palpitations.
Gastrointestinal: Negative for abdominal pain, constipation and diarrhea.
Endocrine: Negative for cold intolerance and heat intolerance.
Genitourinary: Negative for difficulty urinating.
Musculoskeletal: Positive for myalgias. Negative for arthralgias.
Skin: Negative for rash.
Allergic/Immunologic: Negative for environmental allergies and food allergies.
Neurological: Positive for numbness.
    **Pt. Notes sleep maintenance difficulty, with minimal daytime sleepiness and no s/s sleep apnea.**
Hematological: Bruises/bleeds easily.

**Objective:**
Neurologic Exam

Mental Status
Speech: speech is normal
Level of consciousness: alert

Carter, Joel (MR # 62291076) DOB: 02/23/1982

**Progress Notes (continued)**

Cranial Nerves
Cranial nerves II through XII intact.

CN III, IV, VI
Pupils are equal, round, and reactive to light.
Extraocular motions are normal.

Motor Exam
Muscle bulk: normal
Overall muscle tone: normal
Right arm tone: normal
Left arm tone: normal
Right arm pronator drift: absent
Left arm pronator drift: absent
Right leg tone: normal
Left leg tone: normal

Strength
Right neck flexion: 5/5
Left neck flexion: 5/5
Right neck extension: 5/5
Left neck extension: 5/5
Right deltoid: 5/5
Left deltoid: 5/5
Right biceps: 5/5
Left biceps: 5/5
Right triceps: 5/5
Left triceps: 5/5
Right wrist flexion: 5/5
Left wrist flexion: 5/5
Right wrist extension: 5/5
Left wrist extension: 5/5
Right interossei: 5/5
Left interossei: 5/5
Right abdominals: 5/5
Left abdominals: 5/5
Right iliopsoas: 5/5
Left iliopsoas: 5/5
Right quadriceps: 5/5
Left quadriceps: 5/5
Right hamstring: 5/5
Left hamstring: 5/5
Right glutei: 5/5
Left glutei: 5/5
Right anterior tibial: 5/5
Left anterior tibial: 5/5
Right posterior tibial: 5/5
Left posterior tibial: 5/5
Right peroneal: 5/5

Carter, Joel (MR # 62291076) DOB: 02/23/1982

Progress Notes (continued)

Left peroneal: 5/5
Right gastroc: 5/5
Left gastroc: 5/5

Sensory Exam
**Pt. Notes sensory deficit to left face, arm, and leg to light touch and pinrick.**

Gait, Coordination, and Reflexes

Gait
Gait: normal (T25FW not performed due to pt. in chains.)

Coordination
Romberg: negative
Finger to nose coordination: normal
Tandem walking coordination: normal

Tremor
Resting tremor: absent
Intention tremor: absent
Action tremor: absent

Reflexes
Right brachioradialis: 1+
Left brachioradialis: 1+
Right biceps: 1+
Left biceps: 1+
Right triceps: 1+
Left triceps: 1+
Right patellar: 1+
Left patellar: 1+
Right achilles: 1+
Left achilles: 1+
Right grip: 1+
Left grip: 1+
Right plantar: normal
Left plantar: normal

Physical Exam
Constitutional: He appears well-developed and well-nourished.
HENT:
Head: Normocephalic and atraumatic.
Eyes: EOM are normal. Pupils are equal, round, and reactive to light.
**Fundoscopy with bilateral optic pallor, no papilledema or hemorrhage.**
Neck: Normal range of motion. Neck supple.
Cardiovascular: Normal rate and regular rhythm.
Pulmonary/Chest: Effort normal and breath sounds normal.
Abdominal: Soft. Bowel sounds are normal.
Musculoskeletal: Normal range of motion.

Carter, Joel (MR # 62291076) DOB: 02/23/1982

Encounter Date: 08/14/2018
Timothy P Upchurch, MD (Physician)
Neurology

**Progress Notes (continued)**

Neurological: He is alert. He has a normal Finger-Nose-Finger Test, a normal Romberg Test and a normal Tandem Gait Test. Gait normal.

Reflex Scores:

Tricep reflexes are 1+ on the right side and 1+ on the left side.

Bicep reflexes are 1+ on the right side and 1+ on the left side.

Brachioradialis reflexes are 1+ on the right side and 1+ on the left side.

Patellar reflexes are 1+ on the right side and 1+ on the left side.

Achilles reflexes are 1+ on the right side and 1+ on the left side.

Skin: Skin is warm and dry.

Psychiatric: His speech is normal.

Vitals reviewed.

**Assessment:**

1.   **Multiple sclerosis (CMS-hcc)**

Pt. With hx. MS since 2000, formerly on Copaxone but with side effects of blisters (not injection site reactions). Also with increased neuropathic pain on Gabapentin 300 mg TID. Will increase Gabapentin to 600 mg TID, and order CBC. If WBC count is > 0.5, with start Tecfidera 120 mg BID x 7 days then 240 mg BID for MS protection. F/u 3 months.

Plan:

1. Increase Gabapentin to 600 mg three times a day for nerve pain.

2. Check complete blood count; if WBC count is > 0.5, you ay start Tecfidera 120 g tice a day for 1 week, then increase to 240 mg twice  Day for multiple sclerosis protection.

3. Follow up in 3 months.

**Instructions**

📅  Return in about 3 months (around 11/14/2018).

1. Increase Gabapentin to 600 mg three times a day for nerve pain.

2. Check complete blood count; if WBC count is > 0.5, you ay start Tecfidera 120 g tice a day for 1 week, then increase to 240 mg twice  Day for multiple sclerosis protection.

3. Follow up in 3 months.

After Visit Summary (Printed 8/14/2018)

**Additional Documentation**

Vitals:              BP 118/78 (BP Location: Right upper arm, Patient Position: Sitting, Cuff Size: 4 - Adult) Pulse 82 Temp 36.9 °C (98.5 °F) (Oral) Resp 18 Ht 1.778 m (5' 10") Wt 115.2 kg (254 lb) BMI 36.45 kg/m² BSA 2.31 m²

# Exhibit 5

**MICHIGAN DEPARTMENT OF CORRECTIONS**

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT:              JOEL CARTER
DATE OF BIRTH:        02/23/1982
DATE:                 08/16/2018 10:55 AM

## ACMO REVIEW

Requesting Physician:

**Non-formulary Medications**

Medication/Strength/SIG          Reason

Neurontin 600 mg TID             Pt with MS. Prescribed Neurontin for Lhermitte's phenomenon.
                                 Also on Baclofen and Elavil. Seen by Neurology on 8/14/18,
                                 recommending increase.

Approved                Deferred             Review Date

**Off-guideline Medical Details and Special Accomodations**

Description             Reason

Approved                Deferred             Review Date

**Document generated by: Rosilyn Jindal, PA 08/16/2018 10:56 AM**

Name:CARTER, JOEL
Inmate ID: 410324
DOB: 02/23/1982

1/1

**MICHIGAN DEPARTMENT OF CORRECTIONS**

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT:      JOEL CARTER
DATE OF BIRTH:      02/23/1982
DATE:      08/16/2018 1:18 PM

## ACMO REVIEW

Requesting Physician:

**Non-formulary Medications**

| Medication/Strength/SIG | Reason |
|---|---|
| Neurontin 600 mg TID | Pt with MS. Prescribed Neurontin for Lhermitte's phenomenon. Also on Baclofen and Elavil. Seen by Neurology on 8/14/18, recommending increase. |

| Response | Deferred | Review Date |
|---|---|---|
| Deferred Neurontin 600mg TID | | |
| Approved Neurontin 400mg TID via PMC | | 8/16 |

**Off-guideline Medical Details and Special Accomodations**

| Description | Reason |
|---|---|

| Approved | Deferred | Review Date |
|---|---|---|

**Document generated by: Rosilyn Jindal, PA 08/16/2018 10:56 AM**

**Document generated by: Rickey J. Coleman, DO 08/16/2018 1:18 PM**

Name:CARTER, JOEL
Inmate ID: 410324
DOB: 02/23/1982

1/1

# Exhibit 6

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT: **JOEL CARTER**
DATE OF BIRTH: 02/23/1982
DATE: 08/22/2018 8:26 AM
VISIT TYPE: Chronic Care Visit

---

**Chief Complaint/Reason for visit:**
This 36 year old male presents with hypertension and multiple sclerosis.

**History of Present Illness**
**1. Hypertension** (follow-up)
  It is currently stable.  Risk factors include African American race, family history HTN, gout or CAD, inactive lifestyle, male gender or smoking.  Pertinent negatives include blood in urine, buzzing/noise in ears, chest pain, confusion, sweating, headache, irregular heartbeat/palpitations, nausea and vomiting, nosebleeds, SOB, tiredness, visual disturbances, transient weakness, claudication or tremor.
**2. Multiple Sclerosis** (follow-up)
  The pain is  The pain is aching dull and throbbing., aching, dull and throbbing.  Context:  Context: there was no injury. there was no injury.  The pain is aggravated by  The pain is aggravated by movement walking and standing., movement, walking and standing.  Pain Medications used include Neurontin: marked improvement (> 50%).  Pain Medications used include Neurontin: marked improvement (> 50%).  Associated symptoms include Associated symptoms include stiffness tingling or prickling and weakness., numbness, stiffness, tingling or prickling and weakness.  Pertinent negatives include  Pertinent negatives include bruising clicking or popping, crepitus, difficulty going to sleep, feeling of instability, lack of joint motion, limping, locking, night pain, night-time awakening, numbness, swelling or tenderness., bruising, clicking or popping, crepitus, difficulty going to sleep, feeling of instability

**Chronic Problems**
Sclerosis, multiple
Hypertension, essential

**Medications Active Prior to Today's Visit**

| Drug Name | Dose | Qty | Description |
|---|---|---|---|
| Neurontin | 400 Mg | 90 | 1 po TID ( ACMO exp on 8/16/19) |
| Xalatan | 0.005 % | 1 | apply one drop to both eyes at bedtime |
| Amantadine supply | 100 Mg | 30 | 100mg QAM (dose decreased) use current |
| Perphenazine | 8 Mg | 30 | Take 1 by mouth every morning.   CRUSH & |
| Mix with water.  *Give from current supply. | | | |
| Perphenazine | 4 Mg | 30 | Take 1 by mouth at bedtime (in addition to 8 |
| mg tab, total dose = 12 mg).  CRUSH & Mix with water.  *Start tonight. | | | |
| Perphenazine | 8 Mg | 30 | 1 tablet by mouth at bedtime (in addition to 4 |
| mg tab, total dose = 12 mg) CRUSH & mix with water. Start tonight | | | |
| Amitriptyline Hcl | 75 Mg | 30 | 1 po qhs ( ACMO approved x 1 year) |
| Baclofen | 20 Mg | 90 | 1 po q am, noon and qhs ( ACmO approved |
| x 1 year on 1/4/18) | | | |
| Copaxone | 20 Mg/ml | 1 | 20 mg injected daily ( ACMO approved on |
| 12/12/17) x 1 year | | | |

**Allergies**
No known allergies.

CARTER, JOEL
410324
02/23/1982
1/3

## Review of Systems
**Constitutional:**
Negative for change in appetite, chills/rigors, fatigue, fever, generalized weakness, night sweats, weight gain and weight loss.

**HEENT:**
Negative for dysphagia, ear drainage, epistaxis, hearing loss, hoarseness, nasal drainage and tinnitus.
Negative for diplopia, eye discharge, eye pain, eye redness, floaters, photophobia, scotoma and vision loss.

**Respiratory:**
Negative for cough, dyspnea, nocturnal dyspnea, orthopnea, painful respiration, pleuritic pain, sputum and wheezing.

**Cardiovascular:**
Negative for chest pain, edema and irregular heartbeat/palpitations.

**Gastrointestinal:**
Negative for abdominal pain, constipation, diarrhea, heartburn, nausea, reflux and vomiting.

**Genitourinary:**
Negative for nocturia.

**Metabolic/Endocrine:**
Negative for weight loss.

**Neuro/Psychiatric:**
Negative for gait disturbance and headache.
Negative for psychiatric symptoms.

**Musculoskeletal:**
Positive for:
- Bone/joint symptoms.  Joint/Bone: hip.  Side: bilateral.  Joint/Bone: lumbar.

### Vital Signs

| Date | Time | Height | Weight | Temp | Bp | Pulse | Resp. | Pulse Ox Rest | Pulse Ox Amb |
|------|------|--------|--------|------|----|-------|-------|---------------|--------------|
| 08/22/2018 | 8:37 AM | 69.0 | 251.0 | 97.6 | 112/77 | 62 | 16 | 98 | |

| FiO2 | PeakFlow | Pain Score | Comments | | Measured By |
|------|----------|------------|----------|--|-------------|
| | | | | | Rosilyn Jindal, PA |

### Physical Exam
**Constitutional:**  No apparent distress.  Well nourished and well developed.
**Respiratory:**  Normal to inspection.  Lungs clear to auscultation and percussion.
**Cardiovascular:**
Heart Sounds:  NL S1, NL S2.
Extra Sounds:  None.
Murmurs:  None.
Rate and Rhythm:  Heart rate is regular rate.  Rhythm is regular.
See also extremities. No edema is present.
**Abdomen:**
Abdomen is obese.
Symmetric - no distention.  Bowel sounds present, no bruits.  Soft, nontender, no organomegaly.
There is no abdominal tenderness, guarding or rebound.
No hepatic enlargement.
No spleen enlargement.
Negative for palpable masses.
**Extremities:**
No edema is present.
**Neurological:**  Alert and oriented.  Cranial nerves intact.  No motor or sensory deficits.

CARTER, JOEL
410324
02/23/1982
2/3

**Assessment/ Plan**

**Hypertension, essential** (401), Good.

**Sclerosis, multiple** (340), Good.

Plan comments:  1. Hypertension: continue Metoprolol 25 mg BID as prescribed

2. Mulitple Sclerosis: seen by Neurology. Recommended Tecifidera if WBC >0.5. ACMO approval request submitted. Encouraged pt to take Copaxone daily as prescribed. Continue Baclofen and Elavil

3. f/u in one month. Kite for any health concerns or questions. Does not meet criteria for air mattress per MSAC guidelines

**Medications ordered this visit**

| Start Date | Stop Date | Medication Name | Sig Desc |
|---|---|---|---|
| 08/22/2018 | 03/01/2019 | metoprolol tartrate 25 mg tablet | Take 1 by mouth 2 times a day |

**Medications stopped this visit**

| Start Date | Stop Date | Medication | Dose | Sig Desc |
|---|---|---|---|---|
| 06/05/2018 | 08/22/2018 | Metoprolol Tartrate | 25 Mg | Take 1 by mouth 2 times a day |

**Office Services**

| Status | ApptDate | Timeframe | Order | Reason | I |
|---|---|---|---|---|---|
| nterpretation | Value | | | | |
| ordered | 09/24/2018 | | MP Follow-up High : MS, HTN | | |

**Instructions / Education**

| Status | Completed | Order | Reason |
|---|---|---|---|
| completed | 08/22/2018 | Continue current medication | |
| completed | 08/22/2018 | Reviewed medications | |
| completed | 08/22/2018 | Patient was reassured | |
| completed | 08/22/2018 | Patient education provided and patient voiced understanding | |

**Lab Studies**

| Status | Lab Code Comments | Lab Study | Timeframe | Date |
|---|---|---|---|---|
| ordered | PHS2 Fasting. | Comp Panel + CBC/Plt/Thyroid | | 09/17/2018 |
| ordered | WSR Fasting. | Sedimentation Rate, Westergren | | 09/17/2018 |

**Document generated by: Rosilyn Jindal, PA 08/22/2018 8:57 AM**

CARTER, JOEL
410324
02/23/1982
3/3

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT:             JOEL CARTER
DATE OF BIRTH:       02/23/1982
DATE:                09/24/2018 8:34 AM
VISIT TYPE:          Chronic Care Visit

**Chief Complaint/Reason for visit:**
This 36 year old male presents with hypertension and multiple sclerosis.

**History of Present Illness**
**1. Hypertension** (follow-up)
  It is currently stable. Risk factors include African American race, family history HTN, gout or CAD, inactive lifestyle, male gender or smoking. Pertinent negatives include blood in urine, buzzing/noise in ears, chest pain, confusion, sweating, headache, irregular heartbeat/palpitations, nausea and vomiting, nosebleeds, SOB, tiredness, visual disturbances, transient weakness, claudication or tremor.
**2. Multiple sclerosis** (follow-up)
  The problem shows marked improvement (> 50%). The pain radiates to the  The pain is aching, burning, sharp and throbbing. Context: Hx of MS. The pain is aggravated by lifting, movement, walking and standing. Associated symptoms include difficulty going to sleep, night pain, night-time awakening, tenderness and tingling or prickling. Pertinent negatives include bruising, clicking or popping, crepitus, feeling of instability, lack of joint motion, limping, locking, numbness, stiffness, swelling or weakness.

**Chronic Problems**
Sclerosis, multiple
Hypertension, essential

**Medications Active Prior to Today's Visit**

| Drug Name | Dose | Qty | Description |
|---|---|---|---|
| Aspirin | 325 Mg | 60 | one po bid half hour before Tecfidera dose |
| to reduce flushing | | | |
| Tecfidera | 240 Mg | 60 | one po bid restricted ACMO approved ePA |
| #TEC-1823 exp 8/22/19 | | | |
| Amantadine | 100 Mg | 30 | 100mg QAM (dose decreased) use current |
| supply | | | |
| Perphenazine | 8 Mg | 30 | 1 tablet by mouth at bedtime (in addition to 4 |
| mg tab, total dose = 12 mg) CRUSH & mix with water. (use current supply) | | | |
| Perphenazine | 4 Mg | 30 | Take 1 by mouth at bedtime (in addition to 8 |
| mg tab, total dose = 12 mg).  CRUSH & Mix with water.  (use current supply) | | | |
| Perphenazine | 8 Mg | 30 | Take 1 by mouth every morning.  CRUSH & |
| Mix with water.  (use current  supply) | | | |
| Metoprolol Tartrate | 25 Mg | 60 | Take 1 by mouth 2 times a day |
| Neurontin | 400 Mg | 90 | 1 po TID ( ACMO exp on 8/16/19) |
| Xalatan | 0.005 % | 1 | apply one drop to both eyes at bedtime |
| Amitriptyline Hcl | 75 Mg | 30 | 1 po qhs ( ACMO approved x 1 year) |
| Baclofen | 20 Mg | 90 | 1 po q am, noon and qhs ( ACmO approved |
| x 1 year on 1/4/18) | | | |

**Allergies**
No known allergies.
**Review of Systems**

**Constitutional:**
Negative for change in appetite, chills/rigors, fatigue, fever, generalized weakness, night sweats, weight gain and weight loss.

**HEENT:**
Negative for dysphagia, ear drainage, epistaxis, hearing loss, hoarseness, nasal drainage and tinnitus. Negative for diplopia, eye discharge, eye pain, eye redness, floaters, photophobia, scotoma, vision changes and vision loss.

**Respiratory:**
Negative for cough, dyspnea, nocturnal dyspnea, orthopnea, painful respiration, pleuritic pain, sputum and wheezing.

**Cardiovascular:**
Negative for chest pain, edema and irregular heartbeat/palpitations.

**Gastrointestinal:**
Negative for abdominal pain, constipation, diarrhea, heartburn, nausea, reflux and vomiting.

**Genitourinary:**
Negative for nocturia.

**Metabolic/Endocrine:**
Negative for weight loss.

**Neuro/Psychiatric:**
Negative for dizziness, headache, lightheadedness and syncope.

**Musculoskeletal:**
Positive for:
- Back pain.
- Muscle weakness.
- Myalgia.

Negative for bone/joint symptoms.

**Vital Signs**

| Date | Time | Height | Weight | Temp | Bp | Pulse | Resp. | Pulse Ox Rest | Pulse Ox Amb |
|------|------|--------|--------|------|-----|-------|-------|---------------|--------------|
| 09/24/2018 | 8:57 AM | 69.0 | 256.8 | 98.0 | 118/76 | 66 | 16 | 100 | |

| FiO2 | PeakFlow | Pain Score | Comments | | Measured By |
|------|----------|------------|----------|--|-------------|
| | | | | | Rosilyn Jindal, PA |

**Physical Exam**
**Constitutional:** No apparent distress. Well nourished and well developed.
**Respiratory:** Normal to inspection. Lungs clear to auscultation and percussion.
**Cardiovascular:**
Heart Sounds: NL S1, NL S2.
Extra Sounds: None.
Murmurs: None.
Rate and Rhythm: Heart rate is regular rate. Rhythm is regular.
See also extremities. No edema is present.
**Abdomen:**
Symmetric - no distention. Bowel sounds present, no bruits. Soft, nontender, no organomegaly.
There is no abdominal tenderness, guarding or rebound.
No hepatic enlargement.
No spleen enlargement.
Negative for palpable masses.
**Extremities:**
No edema is present.

CARTER, JOEL
410324
02/23/1982
2/3

**Neurological:** Alert and oriented. Cranial nerves intact. No motor or sensory deficits.

**Assessment/ Plan**
**Hypertension, essential** (401), Good.
**Sclerosis, multiple** (340)
Plan comments: 1. Hypertension: continue Metooprolol
2. MS: continue Tecfidera. Baclofen, Elavil, Neurontin as prescribed
3. f/u in one month. IP score is 15.4

**Office Services**

| Status | ApptDate | Timeframe | Order | Reason | ! |
|--------|----------|-----------|-------|--------|---|
| nterpretation | Value | | | | |
| ordered | 10/23/2018 | | MP Follow-up High : MS, HTN | | |

**Instructions / Education**

| Status | Completed | Order | Reason |
|--------|-----------|-------|--------|
| completed | 09/24/2018 | Continue current medication | |
| completed | 09/24/2018 | Reviewed medications | |
| completed | 09/24/2018 | Patient was reassured | |
| completed | 09/24/2018 | Patient education provided and patient voiced understanding | |

**Document generated by: Rosilyn Jindal, PA 09/24/2018 10:40 AM**

CARTER, JOEL
410324
02/23/1982
3/3

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

---

**PATIENT:**              JOEL CARTER
**DATE OF BIRTH:**        02/23/1982
**DATE:**                 12/20/2018 8:37 AM
**VISIT TYPE:**           Chronic Care Visit

---

**Chief Complaint/Reason for visit:**
This 36 year old male presents with multiple sclerosis and hypertension.

**History of Present Illness**
**1. Multiple Sclerosis** (follow-up)
Additional comments:
Here for Multiple Sclerosis f/u. Pt continues to c/o weakness and paresthesias in the bilateral  lower extremities. States that the Tecfidera is effective in controlling symptoms.
**2. Hypertension** (follow-up)
  It is currently stable.  Risk factors include African American race, family history HTN, gout or CAD, inactive lifestyle, male gender or smoking.  Pertinent negatives include blood in urine, buzzing/noise in ears, chest pain, confusion, sweating, headache, irregular heartbeat/palpitations, nausea and vomiting, nosebleeds, SOB, tiredness, visual disturbances, transient weakness, claudication or tremor.
**3. Back pain**
  Location of pain was lower back.  Pain has radiated to the bilateral lower extremities.  The patient describes the pain as numbness, shooting, stabbing and throbbing.  Symptoms are aggravated by lying/rest and rolling over in bed.  Symptoms are relieved by over the counter medication and pain meds/drugs.

**Chronic Problems**
Sclerosis, multiple
Hypertension, essential

**Medications Active Prior to Today's Visit**

| Drug Name | Dose | Qty | Description |
|---|---|---|---|
| Perphenazine | 4 Mg | 30 | 4mg PM (total dose 12mg) |
| Perphenazine | 8 Mg | 30 | 8mg PM (total dose12 mg) |
| Amantadine | 100 Mg | 30 | 100mg AM |
| Perphenazine | 8 Mg | 30 | 8mg AM |
| Triamcinolone Acetonide other day | 0.1 % | 80g | apply topically to affected area twice every |
| Hydrochlorothiazide | 25 Mg | 30 | take one by mouth in the morning |
| Aspirin to reduce flushing | 325 Mg | 60 | one po bid half hour before Tecfidera dose |
| Tecfidera #TEC-1823 exp 8/22/19 | 240 Mg | 60 | one po bid restricted ACMO approved ePA |
| Neurontin | 400 Mg | 90 | 1 po TID ( ACMO exp on 8/16/19) |
| Xalatan | 0.005 % | 1 | apply one drop to both eyes at bedtime |
| Amitriptyline Hcl | 75 Mg | 30 | 1 po qhs ( ACMO approved x 1 year) |
| Baclofen x 1 year on 1/4/18) | 20 Mg | 90 | 1 po q am, noon and qhs ( ACmO approved |

**Allergies**
No known allergies.
**Review of Systems**

**Constitutional:**
Negative for change in appetite, chills/rigors, fatigue, fever, generalized weakness, night sweats, weight gain and weight loss.

**HEENT:**
Negative for dysphagia, ear drainage, epistaxis, hearing loss, hoarseness, nasal drainage and tinnitus.
Negative for diplopia, eye discharge, eye pain, eye redness, floaters, photophobia, scotoma, vision changes and vision loss.

**Respiratory:**
Negative for cough, dyspnea, nocturnal dyspnea, orthopnea, painful respiration, pleuritic pain and wheezing.

**Cardiovascular:**
Negative for chest pain, edema and irregular heartbeat/palpitations.

**Gastrointestinal:**
Negative for abdominal pain, constipation, diarrhea, heartburn, nausea, reflux and vomiting.

**Genitourinary:**
Negative for nocturia.

**Metabolic/Endocrine:**
Negative for weight loss.

**Neuro/Psychiatric:**
Positive for:
- Paresthesia.

Negative for dizziness, headache, lightheadedness and syncope.

**Musculoskeletal:**
Positive for:
- Back pain.

**Vital Signs**

| Date | Time | Height | Weight | Temp | Bp | Pulse | Resp. | Pulse Ox Rest | Pulse Ox Amb |
|------|------|--------|--------|------|------|-------|-------|---------------|--------------|
| 12/20/2018 | 9:14 AM | 69.0 | 265.0 | 98.6 | 137/86 | 84 | 18 | 96 | |

| FiO2 | PeakFlow | Pain Score | Comments | | Measured By |
|------|----------|------------|----------|---|-------------|
| | | | | | Rosilyn Jindal, PA |

**Physical Exam**
**Constitutional:** No apparent distress. Well nourished and well developed.
**Respiratory:** Normal to inspection. Lungs clear to auscultation and percussion.
**Cardiovascular:**
Heart Sounds: NL S1, NL S2.
Extra Sounds: None.
Murmurs: None.
Rate and Rhythm: Heart rate is regular rate. Rhythm is regular.
See also extremities. No edema is present.
**Abdomen:**
Symmetric - no distention. Bowel sounds present, no bruits. Soft, nontender, no organomegaly.
There is no abdominal tenderness, guarding or rebound.
No hepatic enlargement.
No spleen enlargement.
Negative for palpable masses.
**Musculoskeletal:**
No lumbar spine tenderness. Normal mobility and curvature.
**Extremities:**
No edema is present.

CARTER, JOEL
410324
02/23/1982
2/3

**Neurological:** Alert and oriented. Cranial nerves intact. No motor or sensory deficits.

**Assessment/ Plan**
**Hypertension, essential** (401), Good.
**Sclerosis, multiple** (340), Good.
**Backache** (724.5)
Plan comments: 1. Hypertension: continue HCTZ and Lopressor
2. Multiple Sclerosis: continue Tecfidera, Neurontin, Baclofen and Elavil
3. Back pain: continue Ibuprofen prn
4. f/u in one month. Kite for any health concerns or questions

**Medications ordered this visit**

| Start Date | Stop Date | Medication Name | Sig Desc |
|---|---|---|---|
| 12/20/2018 | 02/28/2019 | ibuprofen 400 mg tablet | 1 three times a day as needed |
| 12/20/2018 | 02/28/2019 | metoprolol tartrate 25 mg tablet | Take 1 by mouth 2 times a day |

**Medications stopped this visit**

| Start Date | Stop Date | Medication | Dose | Sig Desc |
|---|---|---|---|---|
| 11/20/2018 | 12/20/2018 | Ibuprofen | 400 Mg | 1 three times a day as needed |
| 08/22/2018 | 12/20/2018 | Metoprolol Tartrate | 25 Mg | Take 1 by mouth 2 times a day |

**Office Services**

| Status | ApptDate | Timeframe | Order | Reason | l |
|---|---|---|---|---|---|
| nterpretation | Value | | | | |
| ordered | 01/23/2019 | | MP Follow-up High : MS, HTN, back pain | | |

**Instructions / Education**

| Status | Completed | Order | Reason |
|---|---|---|---|
| completed | 12/20/2018 | Continue current medication | |
| completed | 12/20/2018 | Reviewed medications | |
| completed | 12/20/2018 | Patient was reassured | |
| completed | 12/20/2018 | Patient education provided and patient voiced understanding | |

**Document generated by: Rosilyn Jindal, PA 12/20/2018 9:26 AM**

CARTER, JOEL
410324
02/23/1982
3/3

# Exhibit 7

# AFTER VISIT SUMMARY



**Joel Carter** DoB: 2/23/1982    📅 1/23/2019 11:40 AM   📍 Henry Ford Allegiance Neurology 517-205-7620

## Instructions from TIMOTHY P UPCHURCH, MD

1. Increase Gabapentin to 1200 mg three times a day for neuropathic pain.
2. Continue Tecfidera 240 mg twice a day for MS.
3. Follow up in 4 months.

## What's Next
You currently have no upcoming appointments scheduled.

If you need to change or cancel any appointment, call the department number listed for your upcoming appointment(s).

## Allergies as of 1/23/2019
Not on File

## Health Maintenance Summary - The Due Dates listed are recommended guidelines.

| INFLUENZA VACCINE | Overdue | 9/1/2018 |
|---|---|---|
| LIPID PANEL | Overdue | 2/23/2017 |
| ADULT TDAP VACCINE | Overdue | 2/23/2001 |
| ADULT TD VACCINE | Overdue | 2/23/2001 |
| HFHS ANNUAL SCREEN FOR DEPRESSION | Next Due | 8/14/2019 |

## Survey Reminder
At Henry Ford, we want you to have the very best patient experience. You may receive a survey. Please take the time to tell us about your experience

## Today's Visit

You saw TIMOTHY P UPCHURCH, MD on Wednesday January 23, 2019 for: Multiple Sclerosis. The following issues were addressed: Multiple sclerosis and Neuropathic pain.

 Blood Pressure
**128/72**

BMI
**39.40**

 Weight
**274 lb
9.6 oz**

Height
**5' 10"**

 Temperature (Oral)
**97.5 °F**

 Pulse
**74**

 Respiration
**16**



*Excerpts of Pl's Med Recs*
*Early Mediation Program*

*Joel Carter #410324 v Heidi Washington, et al.*
*USDC-ED No. 2:21-cv-11361*

*00018*

# Your Medication List as of 1/23/19 11:57 AM

If you have any questions, ask your nurse or doctor.

| | |
|---|---|
| **amantadine HCl** 100 mg capsule<br>Commonly known as: SYMMETREL | Take 100 mg by mouth 2 (two) times daily. |
| **amitriptyline** 75 MG tablet<br>Commonly known as: ELAVIL | Take by mouth nightly. |
| **baclofen** 20 MG tablet<br>Commonly known as: LIORESAL | Take 20 mg by mouth 3 (three) times daily. |
| **COPAXONE** 20 mg/mL Syrg injection<br>Generic drug: glatiramer | Inject 20 mg into the skin daily. |
| **EXCEDRIN MIGRAINE** 250-250-65 mg per tablet<br>Generic drug: aspirin-acetaminophen-caffeine | Take 2 tablets by mouth every 6 (six) hours as needed for pain. |
| **FLUoxetine** 20 MG capsule<br>Commonly known as: PROzac | Take 40 mg by mouth 2 (two) times daily. |
| **gabapentin** 400 MG capsule<br>Commonly known as: NEURONTIN | Take 400 mg by mouth 3 (three) times daily. |
| **latanoprost** 0.005 % ophthalmic solution<br>Commonly known as: XALATAN | Place 1 drop into both eyes nightly. |
| **\* perphenazine** 4 MG tablet | Take 4 mg by mouth 2 (two) times daily. |
| **\* perphenazine** 8 MG tablet | Take one in addition to the 4 mg dose. |
| **risperiDONE** 4 MG tablet<br>Commonly known as: RisperDAL | Take 4 mg by mouth daily. |

\* This list has 2 medication(s) that are the same as other medications prescribed for you. Read the directions carefully, and ask your doctor or other care provider to review them with you.

*Excerpts of Pl's Med Recs*
*Early Mediation Program*          *Joel Carter #410324 v. Heidi Washington, et al.*
*USDC-ED No. 2:21-cv-11361*          *00019*

# BUREAU OF HEALTH CARE SERVICES
## ADMINISTRATIVE NOTE

**PATIENT:**             **CARTER, JOEL**
**DATE OF BIRTH:**       **02/23/1982**
**ENCOUNTER DATE:**     **01/23/2019 3:55 PM**
**COMPLETED BY:**       **Rosilyn Jindal, PA**
**LOCATION:**            **ARF N**

**Tracking Information**
Date of occurrence 01/23/2019

**Type of request**
Other

**Issue**
Seen by neurologist on 1/23/19 for f/u for MS with recommendations

**Actions/ Follow-up**
Medical record review completed

**Additonal comments**
1. Increase Neurontin to 1200 mg three times a day for neuropathic pain
2. Continue Tecfidera 240 mg twice a day for MS
3. Follow up in 4 months

NAME: CARTER, JOEL  M
NUMBER:  410324
D.O.B : 02/23/1982

# MICHIGAN DEPARTMENT OF CORRECTIONS
## CONSULTATION

**SITE: ARF N**
**COMPLETED BY: Rosilyn Jindal, PA      01/23/2019 3:55 PM**

**Patient: JOEL CARTER                ID#: 410324      DOB: 02/23/1982**

Off-site                                          Reference #:
Routine                                           Date of Request: 01/23/2019
3rd Party Insurance: (VA, Workmen's Comp, Federal, Interstate Compact, etc.):
MDOC

*For security reasons, inmates must NOT be informed of date, time or location of proposed treatment or possible hospitalization. Authorization and payment is provided ONLY for requested procedures or treatments of life-threatening conditions. Prior review/discussion with Medical Director is required for additional treatment, procedures and hospitalizations.*

---

**Procedure/Test Requested:** Neurology f/u in 4 months

**Specialty Service Requested:** Neurology

**Signs & Symptoms:**                              **Date of Onset:**
36 y/o AAM with hypertension, glaucoma and MS seen by Neurology on 1/23/19. Dx with MS in 2000 with left-sided weakness. Was on Interferon. Currently on Tecfidera. He c/o leg weakness with pain in both arms, as well. Has burning in the thighs. He c/o back pain. He has Lhermitte's phenonmenon. Has trouble with sleeping. Recommended f/u in 4 months

**Enrolled in Chronic Care Clinic(s)?**

| Clinic | Chronic Condition | Code | Last Visit |
|---|---|---|---|
| Good | Hypertension, Multiple Sclerosis | | 06/05/2018 |

**Current Active Medications:**

| Start Date | Stop Date | Medication Name | Sig Desc |
|---|---|---|---|
| 08/06/2018 | 03/01/2019 | Xalatan 0.005 % eye drops | apply one drop to both eyes at bedtime |
| 09/04/2018 | 08/22/2019 | Tecfidera 240 mg capsule,delayed release ePA #TEC-1823 exp 8/22/19 | one po bid restricted ACMO approved |
| 09/05/2018 | 08/22/2019 | Bayer Aspirin 325 mg tablet | one po bid half hour before Tecfidera dose to reduce flushing |
| 11/20/2018 | 02/28/2019 | hydrochlorothiazide 25 mg tablet | take one by mouth in the morning |
| 11/20/2018 | 02/28/2019 | triamcinolone acetonide 0.1 % topical ointment | apply topically to affected area twice every other day |
| 11/28/2018 | 03/30/2019 | amantadine HCl 100 mg tablet | 100mg AM |
| 12/20/2018 | 02/28/2019 | ibuprofen 400 mg tablet | 1 three times a day as needed |
| 12/20/2018 | 02/28/2019 | metoprolol tartrate 25 mg tablet | Take 1 by mouth 2 times a day |
| 01/07/2019 | 07/07/2019 | ELAVIL 75MGTABLET | 1 po q HS *RESTRICTED ACMO approved through 12/20/20 |
| 01/07/2019 | 12/20/2019 | baclofen 20 mg tablet *RESTRICTED ACMO approved through 12/20/20 | 1 po q am, noon and qhs crush and dissolve. |
| 01/08/2019 | 05/08/2019 | perphenazine 8 mg tablet | 8mg PM |

NAME: CARTER, JOEL M
NUMBER: 410324
D.O.B.: 02/23/1982

# MICHIGAN DEPARTMENT OF CORRECTIONS
## CONSULTATION

**SITE:  ARF N**
**COMPLETED BY:  Rosilyn Jindal, PA        01/23/2019 3:55 PM**
01/08/2019  07/08/2019  Neurontin 400 mg capsule                1 po TID open and dissolve ( ACMO exp on
8/16/19) profile
**Site Medical Provider:** Rosilyn Jindal PA                    01/23/2019

---

**(For UM use only)**

**Criteria Source:  M & R        Interqual        Other**
**Criteria met:  Yes        No        Deferred**

**Reviewer comments:**

**Recommendation for visit appointment:**

**# Visits:**

---

**UM Review #:**
**Reviewer Name:**
**Date Reviewed:**

*Note: Notify physician or midlevel practitioner immediately if unable to obtain appointment within 4 weeks. If service is not completed within 4 weeks, have patient re-evaluated by physician or midlevel practitioner to determine if service is still necessary and appropriate.*

NAME:  CARTER, JOEL M
NUMBER:   410324
D.O.B.:  02/23/1982

# Exhibit 8

**MICHIGAN DEPARTMENT OF CORRECTIONS**

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT:               JOEL CARTER
DATE OF BIRTH:         02/23/1982
DATE:                  01/23/2019 5:58 PM

## ACMO REVIEW

Requesting Physician:

**Non-formulary Medications**

| Medication/Strength/SIG | Reason |
|---|---|
| Neurontin 1200 mg one po TID | Pt with MS. Prescribed Neurontin for Lhermitte's phenomenon and neuropathic pain. Seen by neurology on 1/23/19, recommended increase to 1200 mg TID |

| Approved | Deferred | Review Date |
|---|---|---|
|  | Deferred. |  |

**Off-guideline Medical Details and Special Accomodations**

| Description | Reason |
|---|---|
|  |  |

| Approved | Deferred | Review Date |
|---|---|---|

**Document generated by: Rosilyn Jindal, PA 01/23/2019 3:57 PM**

**Document generated by: Rickey J. Coleman, DO 01/23/2019 5:58 PM**

Name:CARTER, JOEL
Inmate ID: 410324
DOB: 02/23/1982

1/1

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

| | |
|---|---|
| **PATIENT:** | JOEL CARTER |
| **DATE OF BIRTH:** | 02/23/1982 |
| **DATE:** | 01/29/2019 8:22 AM |
| **VISIT TYPE:** | Provider Visit-scheduled |

**Chief Complaint/Reason for visit:**
This 36 year old male presents with hypertension and multiple sclerosis.

**History of Present Illness**
**1. Hypertension** (follow-up)
  It is currently stable.  Risk factors include African American race, family history HTN, gout or CAD, inactive lifestyle, male gender or smoking.  Pertinent negatives include blood in urine, buzzing/noise in ears, chest pain, confusion, sweating, headache, irregular heartbeat/palpitations, nausea and vomiting, nosebleeds, SOB, tiredness, visual disturbances, transient weakness, claudication or tremor.
**2. Multiple Sclerosis** (follow-up)
Pt with hx of MS seen by Neurology on 1/23/19. Dx with MS in 2000 with left-sided weakness. Was on Interferon. Currently on Tecfidera. He c/o leg weakness with pain in both arms, as well. Has burning in the thighs.

**Chronic Problems**
Sclerosis, multiple
Hypertension, essential

**Medications Active Prior to Today's Visit**

| Drug Name | Dose | Qty | Description |
|---|---|---|---|
| Elavil | 75mg | 30 | one po hs restricted ACMO exp 12/20/19 |
| Neurontin | 400 Mg | 90 | 1 po TID open and dissolve ( ACMO exp on |
| 8/16/19) profile | | | |
| Perphenazine | 8 Mg | 30 | 8mg PM |
| Baclofen | 20 Mg | 90 | 1 po q am, noon and qhs crush and |
| dissolve. *RESTRICTED ACMO approved through 12/20/20 | | | |
| Metoprolol Tartrate | 25 Mg | 60 | Take 1 by mouth 2 times a day |
| Ibuprofen | 400 Mg | 90 | 1 three times a day as needed |
| Amantadine | 100 Mg | 30 | 100mg AM |
| Triamcinolone Acetonide | 0.1 % | 80g | apply topically to affected area twice every |
| other day | | | |
| Hydrochlorothiazide | 25 Mg | 30 | take one by mouth in the morning |
| Aspirin | 325 Mg | 60 | one po bid half hour before Tecfidera dose |
| to reduce flushing | | | |
| Tecfidera | 240 Mg | 60 | one po bid restricted ACMO approved ePA |
| #TEC-1823 exp 8/22/19 | | | |
| Xalatan | 0.005 % | 1 | apply one drop to both eyes at bedtime |

**Allergies**
No known allergies.
**Review of Systems**
**Constitutional:**
Positive for:
- Weight gain.

Negative for change in appetite, chills/rigors, fatigue, fever, generalized weakness, night sweats and weight loss.

**HEENT:**
Negative for dysphagia, ear drainage, epistaxis, hearing loss, hoarseness, nasal drainage and tinnitus.
Negative for diplopia, eye discharge, eye pain, eye redness, floaters, photophobia, scotoma and vision loss.

**Respiratory:**
Negative for cough, dyspnea, nocturnal dyspnea, orthopnea, painful respiration, pleuritic pain and wheezing.

**Cardiovascular:**
Negative for chest pain, edema and irregular heartbeat/palpitations.

**Gastrointestinal:**
Negative for abdominal pain, constipation, diarrhea, heartburn, nausea, reflux and vomiting.

**Genitourinary:**
Negative for nocturia.

**Metabolic/Endocrine:**
Negative for weight loss.

**Neuro/Psychiatric:**
Positive for:
- Paresthesia.

Negative for dizziness, gait disturbance, headache, lightheadedness and syncope.

**Vital Signs**

| Date | Time | Height | Weight | Temp | Bp | Pulse | Resp. | Pulse Ox Rest | Pulse Ox Amb |
|------|------|--------|--------|------|-----|-------|-------|---------------|--------------|
| 01/29/2019 | 8:26 AM | 69.0 | 270.0 | 97.6 | 118/74 | 61 | 16 | 99 | |

| FiO2 | PeakFlow | Pain Score | Comments | Measured By |
|------|----------|------------|----------|-------------|
| | | | | Rosilyn Jindal, PA |

**Physical Exam**
**Constitutional:** No apparent distress. Well nourished and well developed.
**Respiratory:** Normal to inspection. Lungs clear to auscultation and percussion.
**Cardiovascular:**
Heart Sounds: NL S1, NL S2.
Extra Sounds: None.
Murmurs: None.
Rate and Rhythm: Heart rate is regular rate. Rhythm is regular.
See also extremities. No edema is present.
**Abdomen:**
Abdomen is obese.
Symmetric - no distention. Bowel sounds present, no bruits. Soft, nontender, no organomegaly.
There is no abdominal tenderness, guarding or rebound.
No hepatic enlargement.
No spleen enlargement.
Negative for palpable masses.
**Extremities:**
No edema is present.

**Assessment/ Plan**
**Hypertension, essential** (401), Good.
**Sclerosis, multiple** (340)
Plan comments: 1. Hypertension: stable. Continue Lopressor, HCTZ
2. MS: continue Neurontin, Baclofen, Tecfidera, Elavil, and Motrin

CARTER, JOEL
410324
02/23/1982
2/3

3. f/u in one month pending labs for annual CCC. Kite for any health concerns or questions

## Office Services

| Status | ApptDate | Timeframe | Order | Reason | I |
|--------|----------|-----------|-------|--------|---|
| nterpretation | Value | | | | |
| ordered | 02/21/2019 | | Chronic Care Clinic Annual : hypertension, MS | | |

## Instructions / Education

| Status | Completed | Order | Reason |
|--------|-----------|-------|--------|
| completed | 01/29/2019 | Continue current medication | |
| completed | 01/29/2019 | Reviewed medications | |
| completed | 01/29/2019 | Patient was reassured | |
| completed | 01/29/2019 | Patient education provided and patient voiced understanding | |

## Lab Studies

| Status | Lab Code Comments | Lab Study | Timeframe | Date |
|--------|-------------------|-----------|-----------|------|
| ordered | CBC2 Fasting. | CBC with Differential, Platelets | | 02/14/2019 |
| ordered | PHS1 Fasting. | Comp Panel (incl. Lipids) | | 02/14/2019 |
| ordered | HBA1C Fasting. | Hemoglobin A1C | | 02/14/2019 |
| ordered | MALBP Fasting. | Microalbumin, Random Urine | | 02/14/2019 |
| ordered | WSR Fasting. | Sedimentation Rate, Westergren | | 02/14/2019 |
| ordered | URINE Fasting. | Urinalysis, Routine | | 02/14/2019 |

**Document generated by: Rosilyn Jindal, PA 01/29/2019 8:43 AM**

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT:              JOEL CARTER
DATE OF BIRTH:      02/23/1982
DATE:               02/25/2019 8:15 AM
VISIT TYPE:        Chronic Care Visit

**Chief Complaint/Reason for visit:**
This 37 year old male presents with hypertension and multiple sclerosis.

**History of Present Illness**
**1. Hypertension** (follow-up)
   It is currently stable.  Risk factors include African American race, family history HTN, gout or CAD, inactive lifestyle, male gender or smoking.  Pertinent negatives include blood in urine, buzzing/noise in ears, chest pain, confusion, sweating, headache, irregular heartbeat/palpitations, nausea and vomiting, nosebleeds, SOB, tiredness, visual disturbances, transient weakness, claudication or tremor.
**2. Multiple Sclerosis** (follow-up)
Additional comments:
Here for annual CCC f/u. Pt continues to c/o arm, leg, back pain. He also c/o weight gain that he attributes to his psych medication. Denies any fatigue, fever, N/V, dizziness, gait disturbances, falls, weakness, numbess or paresthesias.

**Chronic Problems**
Sclerosis, multiple
Hypertension, essential

**Medications Active Prior to Today's Visit**

| Drug Name | Dose | Qty | Description |
|---|---|---|---|
| Amantadine | 100 Mg | 30 | 100mg PM (time change) |
| Elavil | 75mg | 30 | one po hs restricted ACMO exp 12/20/19 |
| Perphenazine | 8 Mg | 30 | 8mg PM |
| Baclofen | 20 Mg | 90 | 1 po q am, noon and qhs crush and |
| dissolve. *RESTRICTED ACMO approved through 12/20/20 | | | |
| Aspirin | 325 Mg | 60 | one po bid half hour before Tecfidera dose |
| to reduce flushing | | | |
| Tecfidera | 240 Mg | 60 | one po bid restricted ACMO approved ePA |
| #TEC-1823 exp 8/22/19 | | | |

**Allergies**
No known allergies.
**Review of Systems**
**Constitutional:**
Positive for:
- Weight gain.

Negative for change in appetite, chills/rigors, fatigue, fever, generalized weakness, night sweats and weight loss.

**HEENT:**
Negative for dysphagia, ear drainage, epistaxis, hearing loss, hoarseness, nasal drainage and tinnitus.
Negative for diplopia, eye discharge, eye pain, eye redness, floaters, photophobia, scotoma, vision changes and

vision loss.

**Respiratory:**
Negative for cough, dyspnea, nocturnal dyspnea, orthopnea, painful respiration, pleuritic pain and wheezing.

**Cardiovascular:**
Negative for chest pain, edema and irregular heartbeat/palpitations.

**Gastrointestinal:**
Negative for abdominal pain, constipation, diarrhea, heartburn, nausea, reflux and vomiting.

**Genitourinary:**
Negative for nocturia.

**Metabolic/Endocrine:**
Negative for weight loss.

**Neuro/Psychiatric:**
Negative for dizziness, headache, lightheadedness and syncope.

**Musculoskeletal:**
Positive for:
- Back pain.
- Bone/joint symptoms.
- Myalgia.


**Vital Signs**

| Date | Time | Height | Weight | Temp | Bp | Pulse | Resp. | Pulse Ox Rest | Pulse Ox Amb |
|------|------|--------|--------|------|------|-------|-------|---------------|--------------|
| 02/25/2019 | 9:04 AM | 69.0 | 277.8 | 97.5 | 124/80 | 69 | 16 | 99 | |

| FiO2 | PeakFlow | Pain Score | Comments | | Measured By |
|------|----------|------------|----------|---|-------------|
| | | | . | | Rosilyn Jindal, PA |


**Physical Exam**
**Constitutional:** No apparent distress.  Well nourished and well developed.
**Eyes:**
Right
General eye condition is normal.
Lid/lash: normal.
No injection.
No icterus.
Cornea is unremarkable.
PERRLA.
Iris: normal.
Anterior chamber: normal.
EOM's intact - no nystagmus.
Left
General eye condition is normal.
Lid/lash: normal.
No injection.
No icterus.
Cornea is unremarkable.
PERRLA.
Iris: normal.
Anterior chamber: normal.
EOM's intact - no nystagmus.
Red reflexes are symmetric.
**Ears:**
Right
Unremarkable to inspection. External ear normal to palpation. Pinna normal to inspection. Canal normal in caliber,

no excessive cerumen, no drainage. Normal tympanic membrane. Hearing grossly intact.
Left
Unremarkable to inspection. External ear normal to palpation. Pinna normal to inspection. Canal normal in caliber,
no excessive cerumen, no drainage. Normal tympanic membrane. Hearing grossly intact.
**Nose / Mouth / Throat:**
External Nose: is unremarkable
Right Nares:  No discharge
Left Nares:  No discharge
Nasal Mucosa:  No mucosal abnormality
Lips/Teeth/Gums: Normal teeth and gums
Tongue: Normal tongue
Palate & Uvula: appear symmetric and normal
Tonsils: No tonsillar hypertrophy or exudates
Oropharynx:  No pharyngeal erythema or exudates or mucosal lesion
**Neck / Thyroid:**  Supple, without adenopathy, or enlarged thyroid.
**Respiratory:**  Normal to inspection.  Lungs clear to auscultation and percussion.
**Cardiovascular:**
Heart Sounds:  NL S1, NL S2.
Extra Sounds:  None.
Murmurs:  None.
Rate and Rhythm:  Heart rate is regular rate.  Rhythm is regular.
See also extremities. No edema is present.
**Abdomen:**
Abdomen is obese.
Symmetric - no distention.  Bowel sounds present, no bruits.  Soft, nontender, no organomegaly.
There is no abdominal tenderness, guarding or rebound.
No hepatic enlargement.
No spleen enlargement.
Negative for palpable masses.
**Extremities:**
No edema is present.
**Neurological:**  Alert and oriented.  Cranial nerves intact.  No motor or sensory deficits.


**Assessment/ Plan**
**Hypertension, essential** (401), Good.
**Sclerosis, multiple** (340), Good.
Plan comments:  1. Hypertension: continue Lopressor and HCTZ as prescribed
2. Multiple Sclerosis: off-site neurology appt approved for May 2019. Continue Tecfidera, Elavil, Neurontin and
Baclofen as prescribed. Motrin as needed
3. f/u in one month. Kite for any health concerns or questions


**Medications ordered this visit**

| Start Date | Stop Date | Medication Name | Sig Desc |
|---|---|---|---|
| 02/25/2019 | 08/31/2019 | ibuprofen 400 mg tablet | 1 three times a day as needed |
| 02/25/2019 | 08/31/2019 | metoprolol tartrate 25 mg tablet | Take 1 by mouth 2 times a day |
| 02/25/2019 | 08/31/2019 | hydrochlorothiazide 25 mg tablet | take one by mouth in the morning |
| 02/25/2019 | 08/31/2019 | Xalatan 0.005 % eye drops | apply one drop to both eyes at bedtime |
| 02/25/2019 | 08/16/2019 | Neurontin 400 mg capsule | 1 po TID open and dissolve ( ACMO exp on 8/16/19) |

**Medications stopped this visit**

| Start Date | Stop Date | Medication | Dose | Sig Desc |
|---|---|---|---|---|
| 01/08/2019 | 02/25/2019 | Neurontin profile | 400 Mg | 1 po TID open and dissolve ( ACMO exp on 8/16/19) |
| 12/20/2018 | 02/25/2019 | Metoprolol Tartrate | 25 Mg | Take 1 by mouth 2 times a day |
| 12/20/2018 | 02/25/2019 | Ibuprofen | 400 Mg | 1 three times a day as needed |
| 11/20/2018 | 02/25/2019 | Hydrochlorothiazide | 25 Mg | take one by mouth in the morning |
| 11/20/2018 | 02/25/2019 | Triamcinolone Acetonide | 0.1 % | apply topically to affected area twice |

CARTER, JOEL
410324
02/23/1982

every other day
08/06/2018 02/25/2019 Xalatan              0.005 %     apply one drop to both eyes at bedtime

**Office Services**

| Status | ApptDate | Timeframe | Order | Reason | I |
|---|---|---|---|---|---|
| nterpretation Value | | | | | |
| ordered | 03/21/2019 | | MP Follow-up High : MS, HTN | | |
| ordered | 03/29/2019 | | Optometry : routine for hypertension and MS | | |

**Instructions / Education**

| Status | Completed | Order | Reason |
|---|---|---|---|
| completed | 02/25/2019 | Continue current medication | |
| completed | 02/25/2019 | Reviewed medications | |
| completed | 02/25/2019 | Patient was reassured | |
| completed | 02/25/2019 | Patient education provided and patient voiced understanding | |

**Document generated by: Rosilyn Jindal, PA 02/25/2019 9:14 AM**

CARTER, JOEL
410324
02/23/1982
4/4

# Exhibit 9

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

| | |
|---|---|
| PATIENT: | JOEL CARTER |
| DATE OF BIRTH: | 02/23/1982 |
| DATE: | 03/02/2019 5:45 PM |
| VISIT TYPE: | Nurse Visit-unscheduled |

**Chief Complaint/Reason for visit:**
This 37 year old male presents with custody/security review.

**History of Present Illness**
**1. Custody/Security Review**

**Nursing Comments**
Sgt Allen brought 8 capsules to healthcare to identify.  Capsules identified as Gapapentin 400mg capsule.  Inmate Carter is the only inmate in 4-block that takes 400mg gabapentin capsules.  Memo written and gave to sgt Allen.

**Chronic Problems**
Sclerosis, multiple
Hypertension, essential

**Medications Active Prior to Today's Visit**

| Drug Name | Dose | Qty | Description |
|---|---|---|---|
| Metoprolol Tartrate | 25 Mg | 60 | Take 1 by mouth 2 times a day |
| Ibuprofen | 400 Mg | 90 | 1 three times a day as needed |
| Hydrochlorothiazide | 25 Mg | 30 | take one by mouth in the morning |
| Xalatan | 0.005 % | 1 | apply one drop to both eyes at bedtime |
| Neurontin 8/16/19) | 400 Mg | 90 | 1 po TID open and dissolve ( ACMO exp on |
| Amantadine | 100 Mg | 30 | 100mg PM (time change) |
| Elavil | 75mg | 30 | one po hs restricted ACMO exp 12/20/19 |
| Perphenazine | 8 Mg | 30 | 8mg PM |
| Baclofen dissolve. *RESTRICTED ACMO approved through 12/20/20 | 20 Mg | 90 | 1 po q am, noon and qhs crush and |
| Aspirin to reduce flushing | 325 Mg | 60 | one po bid half hour before Tecfidera dose |
| Tecfidera #TEC-1823 exp 8/22/19 | 240 Mg | 60 | one po bid restricted ACMO approved ePA |

**Allergies**
No known allergies.

**Document generated by: Monica L. Smith, RN 03/03/2019 1:23 PM**

# MICHIGAN DEPARTMENT OF CORRECTIONS

*"Committed to protect, dedicated to success"*

## MEMORANDUM

**DATE:** 03/02/2019

**TO:** HI/HO

**FROM:** RN M. Smith 1146548

**SUBJECT:** Medication identification


      On today's date, 3/2/19, Sgt Allen came to this RN to identify a medication.  The pill was a orange capsule with 667 imprinted. This medication is identified as Gabapentin 400 mg capsule. This medication is a restricted med line medication that is only taken by inmate Carter, 410324 in this unit, 4-block.