UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL CARTER,

                Plaintiff,

v.

HEIDI WASHINGTON, et al.,

                Defendants.

Case No. 2:21-cv-11361

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER
GRANTING SUMMARY JUDGMENT TO
MDOC DEFENDANTS [59] AND CORIZON DEFENDANTS [61][1]**

Pro se Plaintiff Joel Carter sued prison officials and medical personnel at the Michigan Department of Corrections (MDOC) under the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and 42 U.S.C. § 1983 for violating his First, Eighth, and Fourteenth Amendment rights. ECF 1, PgID 1–2. Plaintiff specifically "challenge[d] the constitutionality of MDOC Policy Directive 03.04.100(QQ), as applied," and alleged that Defendants denied him prescribed, specialized treatment. *Id.* at 2. Plaintiff further alleged that Defendants retaliated against him after he filed grievances against them for denying the treatment to him. *Id.*

In a prior order, the Court granted the partial motion to dismiss the MDOC Defendants filed and dismissed the claims Plaintiff brought against them under § 1983. ECF 47, PgID 642. After discovery, the MDOC Defendants and the Corizon

---

[1] The MDOC Defendants are Heidi Washington and Jeffrey Stieve. The Corizon Defendants are Rickey Coleman and Rosilyn Jindal.

Defendants separately moved for summary judgment. ECF 59; 61. The parties briefed the motions. ECF 62; 63; 64. For the following reasons, the Court will grant summary judgment to the MDOC Defendants and the Corizon Defendants.[2]

## BACKGROUND

Plaintiff was a prisoner at the Gus Harrison Correctional Facility (ARF) in Adrian, Michigan during the time of the disputed events. ECF 1, PgID 5–9 (August 14, 2018 through December 6, 2019); ECF 59, PgID 706; ECF 61, PgID 793. Then, Defendants Washington and Stieve were high-level officials in the MDOC. ECF 59, PgID 707. Defendants Jindal and Coleman were medical providers contracted by Corizon Health, Inc. to provide medical services to MDOC prisoners. ECF 61, PgID 793.

"[Plaintiff] suffer[ed] from relapsing-remitting multiple sclerosis." ECF 59, PgID 707 (citing ECF 1, PgID 4); ECF 62, PgID 1002. Because of his condition, Plaintiff saw outside "neurology specialists . . . on four separate occasions." *Id.* (citing ECF 1, PgID 4–11). At times, the medical staff at ARF did not follow the prescription recommendations of the outside specialists because they disagreed with the dosages or general course of treatment. *See* ECF 61-2, PgID 973. Plaintiff believed that the disagreement about his medical treatment amounted to a denial of "prescribed, specialized treatment." ECF 62, PgID 979.

---

[2] The Court need not hold a hearing because Plaintiff is proceeding pro se and is incarcerated. E.D. Mich. L.R. 7.1(f)(1).

From August 2018 to December 2019, Plaintiff filed a series of grievances against Defendants because of the medical treatment issues. ECF 26-4, PgID 238–39. Three grievances were related to medical care and named at least one Defendant. *Id.* at 246–70. The MDOC rejected two of the grievances for procedural reasons and denied the third on the merits. *Id.* at 239, 256, 261, 266. Plaintiff also believed that "Defendants retaliated against him after he filed [the] grievances against them for denying him treatment." ECF 62, PgID 979 (citation omitted).

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion,

the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

In this case, Plaintiff's verified complaint carries "the same force and effect as an affidavit" for summary judgment purposes. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). "[F]or inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience[] and established by specific facts." *Giles v. Univ. of Toledo*, 214 F.R.D. 466, 469 (N.D. Ohio 2007) (collecting cases).

## DISCUSSION

To start, the Court will detail the exhaustion requirement of the Prison Litigation Reform Act (PLRA). After, the Court will explain the MDOC grievance procedure. The Court will then grant summary judgment to the MDOC Defendants and the Corizon Defendants. Last, the Court will decline to exercise supplemental jurisdiction over the remaining State-law claims.

## I.   PLRA Exhaustion

Under the PLRA, a prisoner must exhaust his or her administrative remedies before suing. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). A prisoner need not plead exhaustion in the complaint. *Jones v. Bock*, 549 U.S. 199, 216

(2007). Rather, a prison official must raise failure to exhaust as an affirmative defense. *Id.*

To prove the affirmative defense, the prison official must show "that no reasonable jury" could find that the prisoner exhausted his or her administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012). A prisoner properly "exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones*, 549 U.S. at 217–19). "[A] prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance." *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) (citing *Woodford*, 548 U.S. at 83). In short, the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 83.

But federal courts may address unexhausted claims in two situations. First, courts may consider unexhausted prisoner claims if a prison official declined to enforce its "own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). And second, courts may excuse a prisoner's failure to exhaust if the administrative remedies were unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1858–60 (2016).

In practice, the PLRA's exhaustion requirement accomplishes three ends: exhaustion "allow[s] prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected[,] and to create an administrative record for those disputes that eventually end up in court." *Mattox*,

851 F.3d at 591 (quotations omitted). If a prisoner flouts the prison's grievance procedures, courts typically dismiss unexhausted claims and address only the merits of exhausted claims. *Jones*, 549 U.S. at 220–24.

II.    MDOC Grievance Policy

The primary grievance procedure outlined in MDOC Policy Directive 03.02.130 contains four parts. First, the prisoner must "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue." ECF 26-3, PgID 226 ¶ Q.

Second, if the issue is unresolved, the prisoner may file a "Step I grievance" "within five business days after the [prisoner] attempted to resolve the issue with appropriate staff." *Id.* at 226 ¶ Q, 227 ¶ W. The prisoner must include the "[d]ates, times, places, and names of all those involved" in the grievance form. *Id.* at 226 ¶ S. The prisoner must send a completed Step I grievance form "to the Step 1 Grievance Coordinator designated for the facility." *Id.* at 227 ¶ W. Usually, the prison must respond within fifteen business days after receiving it. *Id.* at 227 ¶ Z. "Grievances and grievance appeals at all steps [are] considered filed on the date received by the [prison's Grievance] Department." *Id.* at 226 ¶ T.

Third, the prisoner may file a Step II grievance form with the prison's Step II Grievance Coordinator if (i) he is dissatisfied with the Step I response, or (ii) he did not receive a timely response. *Id.* at 228 ¶ DD. The prisoner must file a Step II grievance form within ten business days of (i) receipt of the Step I response, or (ii) expiration of the prison's time to respond. *Id.*; *see also id.* at 226 ¶ U (If the

prisoner "chooses to pursue a grievance that has not been responded to by staff within required time frames, . . . the [prisoner] may forward the grievance to the next step of the grievance process within ten business days after the response deadline expired."). Put differently, if a prisoner does not receive a Step I response within fifteen days, the prisoner must file a Step II grievance within the next ten days.

Fourth, the prisoner may file a Step III grievance to the prison's Grievance Section if (i) he is dissatisfied with the Step II response, or (ii) he did not receive a timely response. *Id.* at 229 ¶ HH. The prisoner must file a Step III grievance form within ten business days of (i) receipt of the Step II response, or (ii) expiration of the prison's time to respond. *Id.* In the end, "[t]he grievance process is not complete until either the MDOC responds to the Step III appeal or the time for doing so expires." *Moore v. Westcomb*, No. 2:20-cv-179, 2021 WL 1851130, at *2 (W.D. Mich. May 10, 2021).

III.   Motion for Summary Judgment by MDOC Defendants Washington and Stieve

To begin, the Court will delineate between the grievance that Plaintiff properly exhausted and those that he failed to exhaust. Plaintiff filed three Step III grievances related to medical care while imprisoned at ARF during the relevant period. ECF 26-4, PgID 239 (ARF-19-01-0236-12F, ARF-19-03-0795-28I, ARF-19-04-0981-28I); *see* ECF 1, PgID 5–9 (August 14, 2018 through December 6, 2019); ECF 59, PgID 709; ECF 61, PgID 805–06. No grievance named Defendant Stieve.[3] ECF 26-4, PgID 259,

---

[3] The omission is likely because Defendant Stieve "resigned as the MDOC Chief Medical Officer and left employment at the MDOC . . . more than four years prior to events [Plaintiff] complains about." ECF 59, PgID 708 (citing ECF 59-5, PgID 771).

264, 269; *see* ECF 59, PgID 709. It necessarily follows that Plaintiff did not administratively exhaust any of his claims against Defendant Stieve. ECF 26-3, PgID 226 ¶ S (A prisoner must include the "[d]ates, times, places, *and names* of all those involved" in the grievance form at Step I.) (emphasis added). And Plaintiff offered no reason why the usual rules should not apply to him. *See* ECF 62, PgID 997–1001. The Court will therefore grant summary judgment to Defendant Stieve on all claims.

Next, of the three relevant grievances, only two named Defendant Washington. ECF 26-4, PgID 264 (grievance against Defendants Jindal, Coleman, and Washington), 269 (grievance against Defendants Washington and Coleman); *see* ECF 59, PgID 709 (ARF-19-03-0795-28I, ARF-19-01-0236-12F). Any claim based on the grievance that did not name Defendant Washington fails for the same reason that the claims failed against Defendant Stieve. *See Woodford*, 548 U.S. at 83. As a result, the Court will only address the two grievances that named Defendant Washington.

The MDOC rejected the first grievance that named Defendant Washington, ARF-19-03-0795-28I, through Step III because Plaintiff "did not attempt to resolve the issue with the staff member most directly involved prior to filing the grievance." ECF 26-4, PgID 265; *see* ECF 26-3, PgID 226 ¶ Q. And no evidence suggested that Plaintiff was "prevented [from trying to resolve the issue with the relevant staff member, Defendant Washington,] by circumstances beyond his[] control." ECF 26-4, PgID 265; *see* ECF 62, PgID 997–1001. Indeed, Plaintiff stated in his Step I grievance

that he spoke with only "RN Smith and sent healthcare and received no response,"[4] even though the grievance involved the alleged conduct of Defendants Jindal, Coleman, and Washington. ECF 26-4, PgID 264. When a prisoner "fails to attempt to resolve the issue with staff prior to filing the grievance," "[t]he MDOC grievance policy requires [the] grievance[] to be rejected." *Whorton v. Dinsa*, No. 2:21-cv-11722, 2022 WL 1216306, at *7 (E.D. Mich. Mar. 28, 2022), *report and recommendation adopted by* 2022 WL 1213109, at *1 (E.D. Mich. Apr. 5, 2022). And a rejection on that ground means that the prisoner has failed to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). Thus, the first grievance that named Defendant Washington must fail because Plaintiff did not properly exhaust his administrative remedies.

The MDOC denied the second grievance that named Defendant Washington, ARF-19-01-0236-12F, on the merits at Step I, Step II, and Step III. ECF 26-4, PgID 266–70. The MDOC Defendants argued, however, that "the grievance would have been subject to rejection for failure to resolve if [Defendant Washington] were the only individual being grieved." ECF 59, PgID 714. But Defendant Washington maintained that "because the grievance also alleged that [Defendant] Coleman

---

[4] Plaintiff stated that he tried "to resolve the issue by sending a kite to healthcare. (Exhibit 18). Attached to Exhibit 18[] is the Health Care Request Form." ECF 62, PgID 999. But none of the exhibits Plaintiff attached to his response brief appeared to be the Health Care Request Form. *See id.* at 1004–76; *see also* ECF 63, PgID 1079 ("Plaintiff did mail the undersigned counsel a copy of his response and exhibits. . . . There were grievances included as Exhibit 18[,] . . . [but] neither MDOC Defendant is named in this grievance.").

denied [Plaintiff] medication that he needed, it was processed at Step I" on the merits. *Id.* Consequently, "the only issue examined at Steps II and III" was the issue about "[Defendant] Coleman's alleged denial of [Plaintiff]'s medication." *Id.* The Court agrees that the MDOC focused exclusively on the alleged denial of medical treatment when it addressed the merits of the ARF-19-01-0236-12F grievance. *See* ECF 26-4, PgID 266–70. And at Step I, Plaintiff never "describe[d] how he attempted to resolve his claims against [Defendant Washington]." ECF 59, PgID 174; *see* ECF 26-4, PgID 269. But it is unclear whether the MDOC, "for reasons of [its] own, overlooked (or perhaps forgave) this procedural failing [when it] chose to address [Plaintiff]'s grievance on the merits." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). If the MDOC did overlook Plaintiff's procedural failing, then the Court must also "consider otherwise-defaulted claims on the merits." *Id.* at 325. Because it is not clear why the MDOC resolved the deficient second grievance on the merits, the Court will also, out of an abundance of caution, address the claims that spring from the second grievance on the merits.

The claims[5] Plaintiff made in the second grievance against Defendant Washington fail on the merits. For one, the complaint noted that the suit was against all Defendants in their individual and official capacities. ECF 1, PgID 1. Yet Plaintiff confirmed that his lawsuit is against Defendant Washington only in her official capacity. ECF 62, PgID 1002. The Court will therefore dismiss the claim against

---

[5] Because the Court denied Plaintiff's § 1983 claims against Defendant Washington, ECF 47, PgID 642, the Court will analyze the claims raised in the second grievance against her as claims arising under the ADA and the RA. ECF 1, PgID 2, 12.

Defendant Washington in her individual capacity since Plaintiff wished to sue Defendant only in her official capacity. *See Lloyd v. City of Streetsboro*, No. 18-3485, 2018 WL 11298664, at *6 (6th Cir. Dec. 20, 2018) ("Like the ADA, the Rehabilitation Act does not impose personal liability upon individuals.") (citing *Hiler v. Brown*, 177 F.3d 542, 547 (6th Cir. 1999) and *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004)).

For another, Plaintiff's ADA and RA claims fail as to Defendant Washington in her official capacity. Under the ADA and the RA, a plaintiff must establish that he "'is being excluded from participation in, denied the benefits of, or subjected to discrimination' because of his disability or handicap." *Mbawe v. Ferris State Univ.*, 366 F. Supp. 3d 942, 955 (W.D. Mich. 2018) (quoting *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016)). Plaintiff failed to point to any evidence that creates a genuine issue of material fact that Defendant Washington showed animus towards him because he had multiple sclerosis or that she unlawfully denied Plaintiff the benefit of services, programs, or activities while he was incarcerated by the MDOC because of his multiple sclerosis diagnosis. *See* ECF 63, PgID 1002–03. Indeed, Plaintiff only pointed to evidence that related to Defendant Coleman or to general, conclusory allegations in the complaint about all "Defendants." *Id.* at 1002 (citing ECF 1, PgID 10 and ECF 62, PgID 1020). Defendant Washington is therefore entitled to summary judgment on Plaintiff's ADA and RA claims. And because Plaintiff did not fully exhaust any other claims against either of the MDOC

Defendants,[6] the Court will grant summary judgment in full to the MDOC Defendants.

IV.     Motion for Summary Judgment by Corizon Defendants Jindal and Coleman

As explained above, Plaintiff filed three Step III grievances. ECF 26-4, PgID 239 (ARF-19-01-0236-12F, ARF-19-03-0795-28I, ARF-19-04-0981-28I); *see* ECF 1, PgID 5–9 (August 14, 2018 through December 6, 2019); ECF 59, PgID 709; ECF 61, PgID 805–06. Plaintiff named Defendants Jindal and Coleman in two grievances, ARF-19-03-0795-28I and ARF-19-04-0981-28I. ECF 26-4, PgID 259, 264. Both grievances were rejected through Step III because Plaintiff "did not attempt to resolve the issue with the staff member most directly involved prior to filing the grievance." ECF 26-4, PgID  260; *see id.* at 256, 261, 265; *see also* ECF 26-3, PgID 226 ¶ Q.

As to ARF-19-03-0795-28I, Plaintiff's argument that the MDOC "improperly rejected his grievance" fails for the same reasons as the Court explained in reference to Defendant Washington, above. And for ARF-19-04-0981-28I, Plaintiff simply stated that the grievance "was exhaust[ed] through Step . . . III. (Exhibit 12)." ECF 62, PgID 1001. But Plaintiff did not attach Exhibit 12 to his response brief. *See* ECF 62, PgID 1004–76; *see also* ECF 63, PgID 1079. At any rate, the record evidence shows

---

[6] In the response brief, Plaintiff claimed that he filed another "grievance against Defendant[s] Jindal and Washington concerning MDOC "practice of denying treatment once prescribed by an outside provider." ECF 62, PgID 1000. He stated that he attached the grievance, called "ARF 1468," as "Exhibit 12." *Id.* But no Exhibit 12 or evidence of the ARF 1468 grievance was attached to the response. *See* ECF 62, PgID 1004–76; *see also* ECF 26-4, PgID 238–39; ECF 63, PgID 1079 ("Plaintiff did mail the undersigned counsel a copy of his response and exhibits. The included Exhibit 12 was medical records."). Thus, the Court will decline to consider the argument because it is not confirmed or supported by any evidence.

that the grievance was rejected, not exhausted, through Step III. ECF 26-4, PgID 259–60 ("Spoke [t]o Nurse Brighton and Nurse Thompson. . . . This Grievance is written against P.A. Jindal . . . and the Regional Medical Director."). The Court therefore need not address the merits of the claims raised in that grievance. *See Whorton v. Dinsa*, No. 2:21-cv-11722, 2022 WL 1216306, at *7 (E.D. Mich. Mar. 28, 2022) (When a prisoner "fails to attempt to resolve the issue with staff prior to filing the grievance," "[t]he MDOC grievance policy requires [the] grievance[] to be rejected."), *report and recommendation adopted by* 2022 WL 1213109, at *1 (E.D. Mich. Apr. 5, 2022); *Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules.").

Finally, no evidence suggested that Plaintiff was "prevented [from trying to resolve the issues with the relevant staff member] by circumstances beyond his[] control." ECF 26-4, PgID 260, 265; *see* ECF 62, PgID 997–1001. As a result, Plaintiff did not properly exhaust the claims relevant to grievances ARF-19-03-0795-28I and ARF-19-04-0981-28I, and he cannot excuse his failure. The Court will grant summary judgment to Defendants Jindal and Coleman on the two unexhausted claims.

The remaining grievance,[7] ARF-19-01-0236-12F, was properly exhausted through Step III. ECF 26-4, PgID 266–70; ECF 61, PgID 805, 808. In that grievance, Plaintiff claimed that "[Defendant] Coleman denied the Neurologist prescription" for

---

[7] In the response brief, Plaintiff claimed he filed two other grievances against the Corizon Defendants, ARF 1390 and ARF 1468. ECF 62, PgID 1000. He stated that he attached the grievances in "Exhibit 12." *Id.* For the same reasons explained in the previous footnote, the Court will decline to consider the arguments related to those grievances since they are not confirmed or supported by any evidence.

"1200 mg of Neurontin (3) times daily for Multiple Sclerosis nerve pain" on January 23, 2019. ECF 26-4, PgID 269. In the present case, Plaintiff alleged that Defendant Coleman showed deliberate indifference to his suffering in violation of the Eight Amendment and violated the ADA and RA. *See* ECF 62, PgID 981–83, 1001–03. Defendant further alleged that Defendant Jindal retaliated against him in violation of the First Amendment because Plaintiff brought a grievance against Defendant Coleman. *See id.* at 988–94. Because the claims against Defendant Coleman are exhausted, the Court will consider them on the merits. After, the Court will resolve the retaliation claim.

### A. *Eighth Amendment Deliberate Indifference*

Plaintiff alleged that Defendant Coleman acted with deliberate indifference to his serious medical needs during the January 23, 2019 incident. ECF 62, PgID 983, 986–88; *see* ECF 26-4, PgID 269. The Eighth Amendment prohibits "cruel and unusual punishment" against individuals convicted of crimes. "The Eighth Amendment is violated when an official is deliberately indifferent to the serious medical needs of a prisoner in their care." *Jones v. Cnty. of Kent*, 601 F. Supp. 3d 221, 243 (W.D. Mich. 2022) (citations omitted). Because the "Eighth Amendment prohibition against cruel and unusual punishments applies to the [S]tates through the Fourteenth Amendment, . . . prisoners may sue [S]tate prison authorities for Eighth Amendment violations." *Rhinehart v. Scutt*, 894, F.3d 721, 735 n.12 (6th Cir. 2018) (citing *Robinson v. California*, 370 U.S. 660, 667 (1962)).

"A claim for the deprivation of adequate medical care has an objective and a subjective component." *Jones*, 601 F. Supp. 3d at 243 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). For "the objective component, the plaintiff must establish that the medical need at issue is sufficiently serious." *Id.* (citing *Farmer*, 511 U.S. at 834). A prisoner can establish that he has a serious medical need if "a doctor has diagnosed a condition as requiring treatment or [] the prisoner has an obvious problem that any layperson would agree necessitates care." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021) (citation omitted). "Only if a prisoner proves this objective element must courts consider the second (subjective) part of the deliberate-indifference test." *Id.* at 535.

"[I]f doctors effectively provide no care for [a serious medical need]," then the objective element is satisfied. *Id.* at 534 (citation omitted). But "[m]ore frequently, doctors provide some care and prisoners challenge their treatment choices as inadequate. To establish the objective element in this common situation, prisoners must show more." *Id.* at 534–35 (citations omitted). That is, the care must be "so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness." *Id.* at 535 (internal quotation marks and quotation omitted). "[T]o prove grossly inadequate care, . . . courts generally require [prisoners] to introduce medical evidence, typically in the form of expert testimony." *Id.* (citations omitted). And "mere malpractice does not violate the Eighth Amendment. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Based on the record, there is no genuine issue of material fact that Defendant Coleman did not act with deliberate indifference to Plaintiff's serious medical needs during the January 23, 2019 incident. MDOC medical records reveal a pattern of Plaintiff receiving significant and consistent medical care for his multiple sclerosis diagnosis and symptoms. *See* ECF 61-1. Defendant Coleman did not deviate from that pattern on January 23, 2019. *See id.* at 894–906; ECF 61-2, PgID 975. In his medical opinion, "[Plaintiff] had only nondescript and non-severe complaints of [multiple sclerosis]-related pain that were adequately controlled by his treatment regime." ECF 61-2, PgID 975. And "upon review of [Plaintiff's] medical records," the tripling of his Neurontin dosage was "not clinically indicated." *Id.* Indeed, Plaintiff already had a "400 mg, three times daily" dosage, and the increase "to 1200 mg . . . , three times daily" would be the "maximum recommended dose of Neurontin." *Id.*; *see also* ECF 61-1, PgID 896–99 (Neurontin dosage of "400 mg by mouth [three] times daily") ("Increase Neurontin to 1200 mg three times a day for neuropathic pain[.]").

In sum, Defendant Coleman "provide[d] some care" to Plaintiff by approving his 400 mg prescription of Neurontin, and Plaintiff "challenge[d] th[at] treatment choice[] as inadequate." *Phillips*, 14 F.4th at 534–35; *see* ECF 61-2, PgID 975–76. But "[t]o establish the objective element in this common situation," Plaintiff was required to "show more." *Id.* at 535 (citations omitted). Yet Plaintiff offered no medical evidence or expert testimony to suggest that Defendant Coleman's medical judgment amounted to "grossly inadequate care" or even "mere malpractice." *Phillips*, 14 F.4th at 535 (citations omitted); *see* ECF 62, PgID 986–88, 1006–76.

All told, no evidence suggests that Plaintiff's treatment provided by Defendant Coleman amounted to "effectively no care" or was "so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness." *Phillips*, 14 F.4th at 534–35 (cleaned up). The Court will therefore grant summary judgment to Defendant Coleman on the deliberate indifference claim.[8]

B.     ADA and RA

Defendant Coleman argued that Plaintiff failed to show that he discriminated against him "by reason of his disability," and therefore failed to establish a viable claim under the ADA.[9] ECF 61, PgID 815. As previously detailed, a plaintiff can establish a violation of the ADA or RA if he "shows that the defendant took action because of the plaintiff's disability, i.e., the plaintiff must present evidence that animus against the protected group was a *significant factor* in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Anderson*, 798 F.3d at 357 (cleaned up); *see S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008) ("Apart from [the RA's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally

---

[8] The complaint alleged two Eighth Amendment claims. ECF 1 PgID 12. The first, claim two, appears to be directed to Defendant Washington since it concerns an allegedly "unconstitutional [policy directive] as applied." *Id.* The Court dismissed the § 1983 claims against Defendant Washington. ECF 47. Still, the Court's analysis of Plaintiff's Eighth Amendment claim two to the extent that it also applies to the Corizon Defendants. *See* ECF 1 PgID 12.

[9] As explained in the Court's prior order, ECF 47, PgID 641, the Court has liberally construed Plaintiff's ADA claim to include an RA claim.

funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same.") (quotation omitted).

Plaintiff lodged only one argument for why he established a viable claim under the ADA and the RA. ECF 62, PgID 1002. As Plaintiff put it, Defendant Coleman admitted "that the PMC recommends pain medication for a variety of medical diagnoses" and that "the PMC provide[s] MDOC prisoners with 'non-formulary pain medications' to treat and manage their objective medical needs." *Id.* (citing ECF 62, PgID 1020). Plaintiff also pointed out that "[t]he symptoms of [multiple sclerosis] var[y] from person to person, and the symptoms are mostly subjective." *Id.* And "Defendants treat[ed] [his] disability differently than the numerous prisoners suffering from more familiar disabilities." *Id.* (citing ECF 1, PgID 10). Thus, Plaintiff argued, "Defendants discriminate[d] against Plaintiff because he is diagnosed with a type of [multiple sclerosis] that relapse[s] and remits." *Id.* (citing ECF 1, PgID 10).

But Plaintiff offered no evidence to support his conclusory assertion that Defendants treated him differently because of his multiple sclerosis diagnosis. *See id.* at 1001–03, 1006–76. And a mere conclusory allegation is insufficient at summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)) (The non-moving party may not simply rest on the pleadings but

18

must present "specific facts showing that there is a genuine issue for trial."). The claim will be dismissed.

### C.    *First Amendment Retaliation*

Plaintiff alleged that in March 2019, "the MDOC Defendants fabricated documents as pretext to deny him prescribed treatment and subject Plaintiff to retaliation for exercising his right to file grievances and lodge complaints against them" in violation of the "First Amendment." ECF 62, PgID 988; *see id.* 988–94 (First Amendment retaliation argument). He later described conduct by Defendant Jindal that was allegedly retaliatory. *Id.* 989–90. And he explained that the retaliation occurred after he "initiated a round of grievances against Defendants" "on January 27, 2019." *Id.* at 989. Liberally construing the claim as against the Corizon Defendants (instead of only against the MDOC Defendants), *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the claim fails because it relates to allegedly retaliatory conduct that occurred in March 2019. The one grievance that Plaintiff fully exhausted related to a January 23, 2019 incident, and he filed it the same month. ECF 26-4, PgID 269. And that grievance, of course, did not contemplate the March 2019 conduct. It necessarily follows that Plaintiff failed to fully exhaust his administrative remedies for the First Amendment claim, so the Court must dismiss it. *See Jones*, 549 U.S. at 220–24.

### V.    State-Law Claims

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Court has original jurisdiction over claims one through four because they raise federal questions. *See* ECF 1, PgID 11–12; 28 U.S.C. § 1331. Claims five and six are tort claims and do not raise a federal question. *Id.* at 13. And because the parties lack complete diversity of citizenship, *id.* at 2–3, the Court has subject-matter jurisdiction over claims five and six based on only supplemental jurisdiction because the claims are "so related to [the federal-question claims] that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

But when "the district court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c)(3). The Court has dismissed all claims against Defendants that raise a federal question, and no claims remain over which the Court has original jurisdiction. The Court will accordingly "decline to exercise supplemental jurisdiction over" the two remaining State-law claims. *Id.*

## CONCLUSION

The Court will grant summary judgment to the MDOC and the Corizon Defendants on the remaining federal claims. Those claims are dismissed with prejudice. And the Court will decline to exercise supplemental jurisdiction over the State-law claims, claims five and six. The State-law claims are dismissed without prejudice. Last, the Court will deny leave to proceed in forma pauperis because

20

Plaintiff cannot take an appeal of the Court's order in good faith. *See* 28 U.S.C. § 1915(a)(3).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment by the MDOC Defendants [59] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment by the Corizon Defendants [61] is **GRANTED**.

**IT IS FURTHER ORDERED** that the State-law claims are **DISMISSED WITHOUT PREJUDICE** because the Court will decline to exercise supplemental jurisdiction over them.

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 18, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 18, 2023, by electronic and/or ordinary mail.

s/ R. Loury
Case Manager

21